585 P.2d 721 (1978)
36 Or.App. 715
In the matter of the Compensation of the Beneficiaries of Forrest Raines, Deceased.
Theresa M. Raines, Claimant and Beneficiary, Appellant,
v.
EDWARD HINES LUMBER CO., Employer and Carrier, Respondent.
No. 76-1345; CA 10612.
Court of Appeals of Oregon.
Argued and Submitted August 25, 1978.
Decided October 30, 1978.
*722 Harold Banta, Baker, argued the cause for appellant. With him on the brief was Banta, Silven & Young, Baker.
Scott M. Kelley, Portland, argued the cause for respondent. With him on the brief were Donald O. Costello and Cheney & Kelley, Portland.
Before RICHARDSON, P.J., and LEE and JOSEPH, JJ.
RICHARDSON, Presiding Judge.
Claimant, the deceased worker's widow, appeals denial of benefits under the Workers' Compensation Act. The referee denied the claim and the Workers' Compensation Board adopted the opinion of the referee. Claimant asserts that where the evidence is evenly balanced the liberal construction of the Act afforded injured workers should tip the evenly balanced scales in favor of claimant. Secondly, she argues there is a presumption in favor of compensability when a worker suffers a heart attack during working hours and while engaged in the performance of duties for the employer. Finally, she contends the medical opinions of two of the medical experts should be disregarded because they were based on inaccurate and incomplete hypothetical fact situations.
The facts surrounding the worker's death are essentially undisputed. He was a fifty-three year old log truck driver who weighed 230 pounds and stood five feet ten and one-half inches tall. Claimant testified her husband was in good health prior to suffering the fatal heart attack. However, postmortem medical evidence disclosed he had a preexisting arteriosclerotic heart condition which was unknown to the worker or his family. He also suffered from hypertension which was being controlled by medication.
Claimant stated the decedent arose in his customary fashion, ate a normal breakfast and left for work at approximately 4:30 or 5:00 a.m. on the date of his death. He made no complaints of illness or discomfort to his wife on that day or the previous day.
Decedent picked up his log truck, drove to the logging site of his employer, picked up a load of logs and delivered the load to the mill site. He returned to the logging site and parked his truck along the side of the road to await his next load of logs. Decedent walked up to the area where another truck was being loaded. He observed this process for a short period of time and then began walking back toward his truck. He was found dead near his truck approximately ten minutes later. Neither his death nor his activities immediately preceding it were observed by the other workers in the area.
Decedent was found lying in a crumpled position with his head against a log on the side of the road down an incline approximately three feet lower than the road. The body was opposite the driver's door of the truck which was standing open. The distance from the body to the truck was approximately 20 feet. Decedent's hard hat, which he had been wearing when observed walking on the road, was lying on the *723 ground midway between his body and the truck. He was clutching one glove in his hand and the other was found lying on the roadway about five feet from the body.
The air temperature at the time was 15 to 20 degrees, the ground was frozen and there was a dusting of snow present. The mortician who prepared the body for burial noted a bruise and "V" shaped laceration on the front of decedent's head near the hairline, an abrasion inside the lower right hand side of his mouth which appeared to be made by a tooth cutting into the lip area and an "L" shaped cut on the back of his head where some bleeding had occurred. The evidence indicated there was a small amount of blood on the log where decedent's head was lying.
Decedent died of a heart attack. The death certificate listed death due to "Hypertensive Arteriosclerotic Heart Disease." All three cardiac specialists who presented written reports concluded death was from cardiac arrhythmia or loss of heart rhythm. The expert evidence indicated this heart failure could occur spontaneously or be induced by some type of stress. None of the experts stated that stress of necessity would had to have been involved.
Claimant maintains that the most reasonable explanation for the worker's death was that he opened the door of the truck, slipped while trying to enter, and struck his lip on the truck door. He then staggered backwards, lost his hat and one glove and then fell down the incline where he struck his head on the log. She contends that the stress of losing his balance, falling and striking his head was sufficient to induce the fatal heart attack.
Employer argues that claimant's theory is mere speculation and maintains the evidence is consistent with decedent having suffered a spontaneous heart attack, falling and ultimately striking his head on the log.
The referee found:
"* * * On consideration of the lay testimony, the medical evidence and the operative physical facts (location and position of the body, truck, hat, gloves and the open door of the truck), the referee believes that the evidence is capable of supporting, among other theories not set forth herein, both claimant's and defendant's theory of the case, equally. Under such circumstances, claimant has failed to carry the burden of proof. * * *"
We agree that claimant failed to sustain her burden of proof and affirm denial of the claim.
In this case there is no direct evidence that decedent was subjected to any on the job stress prior to his heart attack. The explanations offered by each party by a reconstruction of the event from the physical facts are equally plausible. It follows claimant has not sustained the burden of proving legal causation.
Claimant argues that the Oregon appellate courts have liberally construed the Workers' Compensation Act in favor of compensating injured workers, and that in borderline fact situations the scales should be tipped in favor of compensability. The doctrine of liberal construction relates to application of the terms of the Act. It is not transferable to the fact finding process to adjust the burden of proof. The fact finder has to view the evidence objectively to determine if it preponderates in favor of the claimant. If it does not the burden of proof has not been met.
Claimant asks us to adopt a rule, suggested in 1 Larson, Workmen's Compensation Law, 3-104, § 10.32(a) (1978), that presumes an unexplained death occurring during working hours is work related. Professor Larson sets forth the theory as follows:
"Sometimes the situation is reversed: There is positive evidence that the decedent suffered a heart attack, and no definite evidence that the employment contributed to the onset of the attack, as through heat or exertion, or to the aggravation of its effects, as through a fall from a height. On these facts, a substantial majority of jurisdictions deny compensation. The rationale is that such cases are not really unexplained-death cases, since the cause of death is known, and that cause, being idiopathic, is personal. * * *" (Footnotes omitted.) *724 Larson criticizes denial of compensation in this type of case:
"* * * This line of reasoning, logical as it sounds, still leaves out of account the principal practical reason for the unexplained death rule: the fact that death has eliminated the only witness who could supply the missing evidence demanded of his dependents. * * *" 1 Larson, Workmen's Compensation Law, 3-106 § 10.32(a) (1978).
As indicated by Professor Larson, this theory has been embraced by only a small number of jurisdictions. Compensation for injury or death of a worker is created by statute. We decline to amend the Act by adjusting the statutory burden of proof through a judicially created presumption.
It is unnecessary to discuss claimant's final contention as it relates to the validity of certain medical opinions. Since we conclude claimant has failed to establish on the job exertion, the issue of medical causation does not arise. The medical experts' opinions offer no assistance in resolving the fact issue regarding the existence of exertion.
Affirmed.