Argued and submitted April 15, affirmed June 29, 1981

In the Matter of the Compensation of
Iona L. Gormley, Claimant.

**GORMLEY,**
*Petitioner,*
*v.*
STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(No. 79-3456, CA 19356)

630 P2d 407

Charles H. Seagraves, Jr., Grants Pass, argued the cause for petitioner. With him on the brief was Myrick, Coulter, Seagraves & Myrick, Grants Pass.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause for respondent. With him on the brief were K. R. Maloney, General Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund Corporation, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The State Accident Insurance Fund (SAIF) denied petitioner's claim, and a referee affirmed SAIF's decision. The Workers' Compensation Board (Board) affirmed the referee. Petitioner seeks judicial review by this court. ORS 656.298. The issue on review is compensability. We review *de novo*, ORS 656.298(6), and affirm the Board.

Petitioner was employed as a waitress. On August 11, 1978, she fell while backing into the restaurant kitchen. She sustained severe bruises to her left leg and hip and experienced pain in her back later that day. She did not seek medical attention, even though her employer advised her to do so. For the next several months she worked steadily, manifesting no physical problems at work and notifying her employer or fellow employees of none. In November, 1978, she made a two-day and two-night non-stop bus trip to Oklahoma and a similar return trip with no apparent difficulty.

Petitioner's disabling condition first manifested itself as she was getting out of bed on December 11, 1978. SAIF suggests that is the date she sustained the herniated disc for which she seeks compensation. Dr. Ham diagnosed petitioner's problem as a probable ruptured nucleus pulposus, resulting from her fall on August 11. Petitioner was hospitalized and examined by Dr. Strukel, who subsequently became petitioner's treating physician. Dr. Strukel advised SAIF that he believed it was medically reasonable to assume petitioner's herniated disc resulted from her August 11 fall.[1] SAIF asked Dr. Strukel to clarify his opinion. Dr. Strukel explained:

---

[1] On January 22, 1981, petitioner's attorney filed a motion in this court to allow the presentation of additional evidence pursuant to Rule 5.25 and ORS 656.298(6). We allowed the motion without remanding the matter to the referee. The evidence, a letter from Dr. Strukel to SAIF dated April 23, 1979, has been considered by this court.

In that letter Dr. Strukel advised SAIF:

"I would further draw your attention to a letter sent to Ms. McGuffin (SAIF) dated 1/23/79 in behalf of Mrs. Gormley indicating that I think her injury sustained at work was the cause of her problem. I have no reason to change my opinion at this time. If you have any further questions please feel free to contact me."

"* * * Apparently the only injury which occurred to her in my historical record was on 8/11/78. The mechanism by which she describes her fall, landing in a somewhat flexed and rotated position could certainly have produced the herniation. Why the pain was not immediate or prolonged from that period of time I cannot tell you, but I think it is quite clear a herniated disc can act in this manner with frequent exacerbations throughout an extended period of time even if the fragment is completely extruded into the canal.

"With this in mind, I therefore believe it is reasonable to assume the fall in August, 1978, was the major inciting cause of the herniated nucleus pulposus. I think I will never be able to prove or disprove this. As you well know, a lot of people have herniated discs at *[sic]* noted above which occur with pure flexion and pure rotation injuries. In addition a lot of people have herniated discs which occur with falls and have no rotation or flexion in them. We would like to assume however that some sort of traumatic event proceeded *[sic]* the violent extrusion of the disc into the canal and historically the fall in 8/78 is the only event we can come up with for Mrs. Gormley."

Dr. Harwood, SAIF's medical consultant, did not agree. He advised SAIF as follows:

"* * * In my professional opinion, it is not likely that the claimant would have sustained a herniated disc on August 11, 1978 and would have been asymptomatic until 12/11/78 (some 4 months later) before her main problem 'surfaced'. It would be more reasonable to accept the fact that because she was asymptomatic for 4 months following the fall of 8/11/78, that her herniated disc occurred on 12/11/78, at which time she was getting out of bed. * * *"

SAIF then referred petitioner to Dr. Tennyson. His diagnostic impression was that:

"This patient may have sustained a small disc protrusion * * * at the time of her industrial injury August 11, 1978. She may have also aggravated a pre-existing lumbar spondylosis at this time."

In the letter to Ms. McGuffin, Dr. Strukel wrote:

"* * * I think it is medically reasonable to assume the herniated disc the patient is being treated for did occur at the time of her fall. * * *"

"My diagnosis is: L5-S1 left herniated nucleus pulposus confirmed by EMG and could certainly be the result of the accident the patient described."

In response to SAIF's request for clarification, Dr. Tennyson explained:

"If an injury causes herniation of the nucleus pulposus, one may experience symptoms immediately or with a delay of days, weeks or months. If there is a massive protrusion of disc material such that there is immediate nerve compression, then one would expect rather rapid onset of nerve compression symptoms. On the other hand, if there is only a very small herniation of disc material of insufficient magnitude to produce immediate nerve compression, then the symptoms of nerve compression must await the further extrusion and/or migration of sufficient disc material to cause nerve root compression. This extrusion and migration may take days, weeks and even months.

"The torsional and flexional movement of merely turning over in bed or getting out of bed is sufficient to cause herniation of the nucleus pulposus involving the lumbar spinal canal."

The referee found the petitioner's medical evidence was insufficient to establish medical causation in terms of probability and that the denial of the claim by SAIF was correct.[2]

The burden of proof rests upon the petitioner. She must prove her claim by a preponderance of the evidence. The referee, the Board and this court, as fact finders, must view the evidence objectively to determine if it preponderates in favor of the petitioner. If it does not, the burden of proof has not been met. *Raines v. Hines Lbr Co.,* 36 Or App 715, 719, 585 P2d 721 (1978). We agree with the referee and the Board that the medical evidence is insufficient, because it does not show with reasonable certainty that there was a causal connection between the petitioner's

---

[2] The referee reasoned:

"To find that the fall produced a compensable injury, it is necessary that there be medical testimony that there is probably a causal relationship between the fall and the pathological structural change, namely, the herniated nucleus pulposus. Probability in applying the preponderance-of-evidence burden requires that the existence of the causal connection is more likely to be than not to be. It is this trier's finding that Drs. Strukel and Tennyson have not stated, based upon all the medical records rendered by the doctors in this case, that it is more likely true than not true the fall in August 1978 produced the herniated nucleus pulposus which was found on and after December 11, 1978. Claimant has failed to establish medical causation in terms of probability."

August 11 injury and her resultant disability. *Mandell v. SAIF,* 41 Or App 253, 256, 597 P2d 1281 (1979).

■    There are at least two plausible explanations for petitioner's disability: a job-related injury in August, 1978, and a non-job-related injury while getting out of bed several months later. Petitioner relies principally upon the reports of Dr. Strukel. He opined that it is "medically reasonable to assume" her disability occurred at the time of her fall and that "it could certainly be the result of the accident * * * [petitioner] described." He reports "the mechanism by which she describes her fall, * * * could certainly have produced the herniation" and "I think it is quite clear a herniated disc can act in this manner * * *." Dr. Strukel also indicated his opinion was based partly on the fact that he would "like to assume however that some sort of traumatic event proceeded [*sic*] the violent extrusion of the disc * * *," and that the petitioner's fall was the only such event of which he was aware.

Drs. Tennyson and Harwood, however, felt this same condition could occur as a result of torsional and flexional movement involved in merely getting out of bed. In Dr. Harwood's opinion, her condition probably did occur in this manner. Because petitioner's disabling condition first manifested itself as she was getting out of bed, it appears from the evidence that this theory is as medically plausible as one relating the condition to a fall which occurred several months earlier.

The referee found Dr. Strukel's words "could" and "can" were terms of possibility rather than probability. Dr. Strukel's qualified comments "it is reasonable to assume" and "we would like to assume" indicate to us his opinion may have been based more on the history related by his patient than on concrete medical evidence. His admission that "I think I will never be able to prove or disprove this" further militates against a finding of medical causation in terms of probability.

■■    Petitioner must prove more than just the possibility of causal connection. The doctrine of liberal construction of the Workers' Compensation Act is not transferable to the fact finding process to adjust the burden of proof. *Raines v. Hines Lbr Co., supra,* 36 Or App at 719.

We conclude that the medical evidence in this case does not establish with reasonable certainty that the petitioner's condition is causally connected to her August 11, 1978 injury. The order of the Board is affirmed.

Affirmed.