Argued and submitted July 20, 2000, reversed and remanded for reconsideration October 3, 2001

In the Matter of the Compensation of
Lynn M. Brown, Claimant.

**SAIF CORPORATION**
and Gary's Market,
*Petitioners,*

*v.*

Lynn M. BROWN,
*Respondent.*

96-05732; A107381

33 P3d 336

David L. Runner argued the cause and filed the brief for petitioners.

Greg Noble argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

## KISTLER, J.

The Workers' Compensation Board found, on remand, that claimant suffers from a compensable mental disorder as a result of a work-related assault. Employer petitions for review of that order. We reverse and remand.

Claimant worked the night shift at a convenience store in Woodburn. On December 14, 1995, sometime after midnight, three young men came into the store. One of them took some beer and tried to leave the store without paying. When claimant tried to stop him, one of the other men hit her in the face. "Claimant's eyeglasses were broken and she sustained a laceration under her left eye." One of the men stayed to help claimant. The other two fled. They were caught shortly after that, and claimant identified them as the persons who had robbed the store and assaulted her. Claimant then went to the hospital where she received stitches for the laceration.

Claimant returned to regular work the week after the assault, and employer accepted the laceration and left cheek contusion as a nondisabling injury. After the assault, claimant's husband stayed with her most nights during her shift until late March 1996. In March 1996, claimant went to her family doctor, Dr. Schwerzler, for a follow-up on her facial injury. He noted that she was having feelings of anxiety, fear, and depression when she had to work alone. Schwerzler referred her to Dr. Malone, a psychologist, and took claimant off work beginning in April.

Malone concluded that claimant "meets [the] criteria for Post Traumatic Stress Disorder (309.89) after the blow to her head on December 14, 1995." He noted that "[t]he trial for one of the youths ended in early March, and [claimant] thought if she sat through the whole trial, she would feel better. Instead she has been even more nervous since then." Malone explained the symptoms that claimant was experiencing:

> "[Claimant] has memories of the incident arising 'out of the blue,' 'like when filling out forms for doctors.' Memories making her 'scared, ashamed, violated, nervous and jumpy.' Nightmares of it were nightly at first and now occur

biweekly. She tries to push memories out of her head. She cries at least every other day, and did during the interview. She has an exaggerated startle response, jumping while watching tv when the wind blows the screen door. She is overly irritable. She was scared to go to work, especially on weekend nights, and thinking of it makes her 'shake inside.' Sleep is erratic."

Dr. Klecan, a psychiatrist, examined claimant at employer's request. In Klecan's opinion, the assault that claimant experienced was not sufficiently severe to cause post-traumatic stress disorder. In his view, there was "[n]o mental disorder." Rather, "[e]mbellishment and/or fabrication of symptoms is present." When asked what was the major contributing cause of claimant's need for treatment, Klecan responded:

"I think this question is moot in that I found no need for psychological treatment at all. There is, of course, financial motivation for her to visit a psychologist, but whatever her motivations may be, her history and her mental status examination objectively are not consistent with a diagnosis of mental disorder as claimed by herself."

Both Schwerzler and Malone reviewed Klecan's report. Neither agreed with it. Malone noted that Klecan's "position seems rather extreme and is based on questionable assumptions." He explained that, in his view, claimant had experienced an event that threatened serious injury and that that experience, according to the DSM-III, could cause post-traumatic stress disorder. He also explained why he did not agree with other assumptions on which Klecan based his conclusion. Both Malone and Klecan's opinions were limited to the question whether claimant suffered from post-traumatic stress disorder. Neither opinion addressed whether work was the major contributing cause of her disorder.

Employer denied the post-traumatic stress disorder claim, and claimant requested a hearing. At the hearing, claimant testified that she and her husband had separated in the fall of 1995 but had reconciled in three weeks and that her husband had been with her in December when the assault occurred. The administrative law judge (ALJ) also elicited from claimant that before and during the fall and winter of 1995, she had incurred significant gambling debts

and went through a bankruptcy. Claimant explained on redirect that, in the early part of 1995, she had used her credit card to finance her gambling, that she had incurred a substantial amount of debt, that she had declared bankruptcy in March or April 1995, and that she had given up her credit cards at approximately the same time. Although she continued to gamble, she now did so only with cash in hand and had substantially limited the amount she risked by the date of the hearing. She added that her financial situation was better since she filed for bankruptcy in March or April 1995.

Employer called Klecan to testify. Klecan testified about the criteria for diagnosing post-traumatic stress disorder. He explained that "post-traumatic stress disorder is a very specific unique mental illness with certain criteria for making the diagnosis." "[T]he essential core experience that creates a post-traumatic stress disorder is an experience where a person is held in a position of helpless terror for a period of time and undergoes trauma in that experience." "The core of this diagnosis is that the person is in—is held in this position and psychologically they become overwhelmed. The experience is so extreme, so unusual, that they're not able to cope with it psychologically for awhile." In attempting to come to grips with the experience, the person "goes through a period of having symptoms." Klecan identified the severity of the trauma, the nature of the symptoms, and their timing as the criteria by which one determines whether a person is suffering from post-traumatic stress disorder. Klecan reiterated his position that, in this case, neither the precipitating event nor claimant's reported symptoms were consistent with a diagnosis of post-traumatic stress disorder.

During Klecan's testimony, employer noted that claimant had testified "about some other issues [the gambling and marital problems] that were not raised in either your interview or apparently with Dr. Malone." Employer then asked Klecan whether "those [issues] factor in at all given the time sequence and any of the facts in this case." Klecan replied:

"To me they would. I think this additional information makes me think that probably there's much that we do not know about her psycho—her life outside of work, about

what was really going on in her marriage, in her personal life. I have myself little doubt that there were issues within the marriage and personal relationships, which were affecting her mental state and in some way involved in her claim in this respect. Although, I don't know what that would be for sure. In the specifics, I just have the sense that there's enough here to warrant that conclusion."

Klecan testified that the off-the-job issues that claimant had experienced before the robbery could provide an explanation for the symptoms she reported after the robbery.[1]

The administrative law judge upheld employer's denial. A divided Board reversed. The majority found Schwerzler's and Malone's opinions more persuasive than Klecan's. It explained that Malone's opinion was "thorough and well-reasoned" and was "based on extensive familiarity with claimant's psychological symptoms." It accepted Malone's conclusion that "every line of reasoning Dr. Klecan uses to support fabrication is faulty" and explained that it found Malone's opinion "considerably more persuasive than Dr. Klecan's opinion."

Finally, the majority noted that the dissenting member discounted Malone's opinion because Malone had not considered the impact of potential off-the-job stressors such as claimant's gambling debts, bankruptcy, and marital difficulties. The majority explained:

"[W]e do not find this to be a fatal flaw in Dr. Malone's opinion because claimant's marital problems had either resolved or improved significantly at the time of the assault and thereafter (claimant's husband was in the store when she was attacked and spent time with claimant in the store after the assault) and claimant's financial difficulties had improved."

Employer petitioned for review raising two related but separate issues. It argued that Malone's and Schwerzler's opinions were legally insufficient because neither doctor had considered the potential effect of off-work stressors on claimant's condition. *See SAIF v. Brown*, 159 Or App 440, 445-46,

---

[1] In his report, Klecan had taken the position that claimant's reported symptoms were embellished, if not fabricated. In his testimony, he appeared to acknowledge that her symptoms might be real but were perhaps caused by other factors.

978 P2d 407 (1999) (summarizing employer's arguments). Additionally, employer argued that the Board had erred in not applying a clear and convincing standard to claimant's mental stress claim. *Id.* We did not reach the first issue that employer raised. Rather, we reversed and remanded for reconsideration because it was not clear whether the Board had applied a clear and convincing standard. *Id.* at 446.

On remand, the Board reaffirmed its earlier ruling and found that claimant had established by clear and convincing evidence that the work-related assault was the major contributing cause of her post-traumatic stress disorder. It also noted that employer had argued on judicial review that the Board had "improperly rendered [its] own medical opinion when [the Board] concluded that off-work stressors had improved before the assault occurred." The Board disagreed, reasoning:

> "We did not render a medical opinion. Rather, we drew legitimate inferences from the evidence in the record and concluded that Dr. Malone's opinion should not be discounted on the basis of insufficient consideration of off-the-job stressors. After further consideration of the matter, we continue to find Dr. Malone's opinion persuasive despite his alleged lack of information regarding off-work stressors."[2]

Employer has petitioned for review of the Board's order on remand. It argues that both Malone's and Schwerzler's opinions "were based on incomplete and incorrect information relative to the issue of major contributing cause and thus failed to weigh the relative contribution of different causes of claimant's condition." It follows, employer reasons, that neither opinion provides a legally sufficient basis for the Board's conclusion that the workplace assault was the major contributing cause of claimant's mental disorder. However, neither Malone's nor Schwerzler's opinion expressly addressed the question of major contributing cause. Rather, both were limited to the question whether claimant suffered from a recognized mental disorder—post-traumatic stress disorder—as a result of the workplace assault.

---

[2] It is unclear whether Malone was unaware of claimant's marital and gambling problems. The Board did not resolve that factual issue but assumed that he was not aware of those issues.

In this posture, the issue that employer raises on appeal more properly divides into two separate questions. The initial question is whether Malone's and Schwerzler's opinions are sufficient to support their diagnosis that claimant suffers from post-traumatic stress disorder. If they are, the remaining question is whether their opinions that she suffers from that disorder were sufficient to permit the Board to conclude that the work-related assault was the major contributing cause of her disorder.

On the first issue, ORS 656.802(3)(c) provides that a mental disorder is not compensable unless, among other things, the claimant establishes that "[t]here is a diagnosis of a mental or emotional disorder which is generally recognized in the medical or psychological community." In this case, both Malone and Schwerzler diagnosed claimant as suffering from post-traumatic stress disorder, which resulted from the assault at work. Employer argues, however, that, because Malone and Schwerzler had incomplete information, they had no reliable basis to make that diagnosis. In employer's view, on this record, the Board's only option was to find that claimant had failed to prove her case.

Employer's argument sweeps too broadly. Whether a doctor's information is complete or incomplete will vary depending on the particular diagnosis that a doctor is asked to make. In this case, Klecan testified at the hearing that post-traumatic stress disorder "is a very specific unique mental illness with certain criteria for making the diagnosis." The criteria that Klecan identified are the nature of the traumatic event, the nature of the symptoms, and when the symptoms appear. Malone did not disagree that those are the relevant criteria. Rather, he disagreed with Klecan in determining how they applied in this case.

■ Given Klecan's and Malone's medical opinions, the Board reasonably could find that Malone and Schwerzler had a complete history for the purposes of deciding whether claimant suffered from post-traumatic stress disorder. Both Malone and Schwerzler had all the information that, according to Klecan, is necessary to make that diagnosis. They knew the nature of the precipitating event, the nature of

claimant's symptoms, and their onset.[3] We accordingly disagree with employer that, on this record, the Board was required to find that claimant had failed to prove her case; that is, there is medical evidence in the record from which the Board could find that the information that Schwerzler and Malone lacked was not relevant to diagnosing post-traumatic stress disorder.

■ The Board, however, did not adopt that rationale. It appears to have assumed that the off-work stressors would ordinarily be relevant to diagnosing post-traumatic stress disorder but reasoned that those stressors were not important in this case because they had essentially resolved by the time of the assault. We agree with employer that the rationale the Board adopted—that the off-work stressors had resolved and would not have any residual effect on claimant—is a complex medical question that requires an expert opinion. *See Benz v. SAIF*, 170 Or App 22, 27-28, 11 P3d 698 (2000). Because the Board's stated reason for saying that Malone's and Schwerzler's opinions were based on complete information is not supported by any medical opinion, we cannot affirm its order. We accordingly reverse and remand for further consideration.[4]

Reversed and remanded for further consideration.

---

[3] We note that Klecan did not testify that the information he learned at the hearing was relevant to determining whether claimant suffered from post-traumatic stress disorder. Rather, he explained that that information could provide an alternative explanation for the symptoms that claimant had reported.

[4] Give our disposition of the first issue, we do not reach the second issue raised by employer—whether a diagnosis of post-traumatic stress disorder is sufficient standing alone to permit the Board to find that the traumatic experience that caused the disorder was also its major contributing cause.