Argued and submitted June 6, affirmed on petition; on cross-petition, reversed and remanded for reconsideration of attorney fees August 10, 2005

In the Matter of the Compensation of
Timothy Cary, Claimant.

CITY OF ALBANY,
*Petitioner - Cross-Respondent,*

*v.*

Timothy CARY,
*Respondent - Cross-Petitioner.*

02-00211; A122669

117 P3d 1062

James W. Moller argued the cause and filed the briefs for petitioner - cross-respondent.

Thomas M. Cary argued the cause and filed the briefs for respondent - cross-petitioner.

Before Armstrong, Presiding Judge, and Brewer, Chief Judge, and Landau, Judge.*

ARMSTRONG, P. J.

---

* Landau, J., *vice* Richardson, S. J.

## ARMSTRONG, P. J.

Employer seeks review of an order of the Workers' Compensation Board holding that claimant has a compensable occupational disease of the inner ear, encompassing a perilymphatic fistula and unilateral hyperactive labyrinthitis. Employer contends that claimant's condition is properly analyzed as an injury and that the claim should be denied as untimely. If the claim is analyzed as an occupational disease, then employer challenges the board's determination that the claim was both timely and compensable. Claimant has filed a cross-petition, asserting that the board did not adequately explain its award of attorney fees and abused its discretion in awarding only $12,000. On the petition, we conclude that the board's order is supported by substantial evidence and based on substantial reason. On the cross-petition, we conclude that the board has not adequately explained the award of attorney fees, and we therefore remand for reconsideration.

Claimant worked for employer as a firefighter from 1977 until June 1994. Beginning in 1982, he worked as dive trainer for employer's water rescue team. In 1991 or 1992, while training students in dive rescue, claimant experienced vertigo and disorientation while ascending quickly to help a student. Claimant held onto a piling until he regained his equilibrium and recovered after a few minutes and slowly ascended to the surface. He reported the incident to his wife but did not report the incident to employer or seek medical treatment.

Claimant experienced a second incident of disorientation during a subsequent dive for employer, when he again ascended quickly to help a student. Claimant experienced a third episode while driving across the Santiam Pass. In November 1993, he sought medical treatment from Dr. Rafalski for vertigo. Rafalski diagnosed benign positional vertigo with possible labyrinthitis and prescribed the medication Meclizine as needed. Claimant did not file a claim at that time.

Claimant stopped working for employer in 1994. In April 1999, he started a job that required him to drive weekly

over the Cascade Mountains. He frequently experienced dizziness while driving over the mountains.

On December 25, 1999, claimant experienced severe vertigo after eating a rich meal. The symptoms did not resolve spontaneously, as they had in the past. He sought treatment from Dr. Conway, who referred claimant to Dr. Epley, an otologist and neurologist. In December 1999, Epley diagnosed an isolated acute hydropic attack in the left ear, followed by secondary problems, including variate and unilateral hyperactive labyrinthine dysfunction, as well as the possibility of vestibular neuronitis, labyrinthine dysfunction secondary to infectious process, and a perilymphatic fistula. In August 2001, Epley wrote a letter to claimant's attorney stating that, based on claimant's history of vertigo, there was a reasonable medical probability that claimant's chronic unilateral hyperactive labyrinthitis was primarily caused by his employment as a scuba diving instructor. Claimant filed a claim against employer for chronic unilateral hyperactive labyrinthitis, which employer denied. Claimant had surgery to treat his ear condition, and, after surgery, Epley confirmed the diagnosis of a perilymphatic fistula, an opening from the middle ear to the inner ear. Claimant sought benefits for that condition as well, which employer also denied.

We first review the board's conclusion that claimant's inner ear condition is properly analyzed as an occupational disease. In deciding whether a claim is properly analyzed as an injury or an occupational disease, it is necessary to determine whether the condition developed gradually or suddenly. *Smirnoff v. SAIF*, 188 Or App 438, 72 P3d 118 (2003). As we said in *Smirnoff*, in making that determination, it is important to focus on the onset of the condition itself, rather than the onset of the condition's symptoms. *Id.* at 443.

The board's order includes the following analysis of the issue:

"Claimant performed repetitive work activities for about ten years that required the use of scuba equipment while descending to varying depths of water and ascending to the surface. He experienced vertigo on two occasions while ascending in the early 1990s, an episode of vertigo while driving over a mountain pass, and another episode of

vertigo for which he sought medical treatment in 1993. Subsequent to 1994, when he quit working for the employer, he experienced occasional episodes of vertigo while driving over mountain passes for different employers.

"On December [25], 1999, claimant experienced a severe episode of vertigo after a holiday dinner with red wine. Despite the first two vertiginous symptoms appearing suddenly during rapid ascents while scuba diving, the *medical evidence provided by Dr. Epley indicates that claimant's condition was gradual in onset,* occurring over a period of 10 years. Consequently, under these circumstances, we conclude that claimant's condition is properly analyzed as an occupational disease."

(Emphasis added.)

The first part of the board's discussion, describing claimant's episodes of vertigo, focused on claimant's symptoms. The board then referred to Epley's opinion, which it said "indicates that claimant's condition was gradual in onset." Employer challenges the board's interpretation of Epley's opinion. Epley's opinion, however, supports a finding that claimant's chronic unilateral hyperactive labyrinthitis was gradual in onset and was likely caused by exposure at work, including an initial trauma to the inner ear during a dive, resulting in a fistula, and subsequent employment exposure involving pressure changes. Epley opined that "damage to the inner-ear structures can occur slowly over a period of time due to the presence of a perilymphatic fistula." Thus, we conclude that the board properly analyzed the claim as an occupational disease.

■   As noted, employer asserts that, if the claim is analyzed as an occupational disease, it is untimely under the provisions of ORS 656.807(1), which provides, as relevant:

"All occupational disease claims shall be void unless a claim is filed with the insurer or self-insured employer by whichever is the later of the following dates:

"(a)   One year from the date the worker first discovered, or in the exercise of reasonable care should have discovered, the occupational disease; or

"(b)   One year from the date the claimant becomes disabled or is informed by a physician that the claimant is suffering from an occupational disease."

In *Wayne-Dalton Corp. v. Mulford,* 190 Or App 370, 375, 79 P3d 894 (2003), we said that under the ordinary meaning of the word "informed," as used in ORS 656.807(1)(b), the statute of limitations does not begin to run "until a physician *tells the claimant expressly or in substance* that the patient is suffering from an occupational disease." (Emphasis added.) Without the benefit of *Wayne-Dalton Corp.*, the board held in this case that the claim was timely because it was filed within one year of when claimant was "clearly told" that he was suffering from an occupational disease in an August 2001 letter written by Epley. Employer asserts that the board's "clearly told" standard is not identical to our "told expressly or in substance" standard set forth in *Wayne-Dalton Corp.*, and that the case should therefore be remanded for reconsideration in light of that standard. There is no need for a remand. If there is any difference between the "clearly told" and "told expressly or in substance" standards, it is inconsequential in this case. We therefore conclude as a matter of law that claimant's occupational disease claim was timely under ORS 656.807(1).

■        Employer's final contention is that claimant's employment after 1994 contributed to a worsening of his condition. The board said that "[t]his record provides no evidence that claimant's condition actually worsened while employed by a subsequent employer." In employer's view, the board's statement has mischaracterized the record, because Epley's deposition provides *some* evidence of a worsening of claimant's condition after 1994. Epley was asked by employer's attorney whether he could say that driving over the mountains could, "with any reasonable medical probability," worsen claimant's underlying condition. Epley replied: "Yes. It—it's pure conjecture. You don't really know."

Although Epley's initial response—"yes"—could be read in isolation to signify his agreement with the proposition that driving over the mountains could, with reasonable medical probability, have worsened claimant's condition, the full statement, including the explanation that the answer is

"pure conjecture. You don't really know," can only mean that there was a *possibility* that claimant's condition worsened when he drove over the mountains; "pure conjecture" is not evidence based on a reasonable medical probability. *See Gormley v. SAIF*, 52 Or App 1055, 1060, 630 P2d 407 (1981) (medical opinions must be stated in terms of probability rather than possibility). We accordingly affirm the board's order that employer did not satisfy its burden to show that a later employment caused an actual worsening of claimant's condition.

■    In his cross-petition, claimant contends that the board's award of an insurer-paid attorney fee is not sufficient for judicial review and further that the board abused its discretion in awarding an unreasonably low fee. In his request for attorney fees, claimant's attorney documented approximately 139 hours of time spent through the hearing level, but did not document time spent at the board level. He did not request a specific hourly rate. He requested a fee of "not less than $20,000 at the hearing level [approximately $144 per hour] and an additional assessed fee on Board review." Employer questioned the extent of the benefits that claimant might derive from the claim, and, without other specific objection, suggested that a fee of $10,000 would be more than adequate. The board awarded a fee of $12,000 for services at both the hearing and board level. The board explained:

> "In reaching this conclusion, we have particularly considered the time devoted to the issue (as represented by the record, claimant's appellate briefs, claimant's counsel's statement of services, and the employer's position), the complexity of the issue, and the value of the interest involved, and the risk that counsel may go uncompensated."

We agree with claimant that the board has not explained how the factors that it considered influenced its decision to award substantially less than the amount requested. In *Schoch v. Leupold & Stevens*, 325 Or 112, 934 P2d 410 (1997), the Supreme Court said that, when there is a specific statement of services or an objection to a fee award, the board must do more than simply describe the factors that it has considered and then posit a reasonable fee. The board must explain what

led it from the factors it considered to the amount of the attorney fee it awarded. *Id.* at 119. Without that explanation, the order is not sufficient to permit an appellate court to review the board's exercise of discretion. *Id.* Here, the board's order does not explain what portion of the request it rejected or why. For that reason, we remand the board's order for reconsideration of the request for attorney fees.

Affirmed on petition; on cross-petition, reversed and remanded for reconsideration of attorney fees.