Argued and submitted December 30, 2010, reversed and remanded for
reconsideration December 7, 2011

In the Matter of the Compensation of
Kavin R. Hunter, Claimant.

Kavin R. HUNTER,
*Petitioner,*

*v.*

SAIF CORPORATION
and Department of Corrections,
*Respondents.*

Workers' Compensation Board
0701041; A140887

268 P3d 660

R. Adian Martin argued the cause and filed the brief for
petitioner.

Julene M. Quinn, Special Assistant Attorney General,
argued the cause and filed the brief for respondents.

Before Haselton, Presiding Judge, and Armstrong, Judge,
and Duncan, Judge.

DUNCAN, J.

.

## DUNCAN, J.

Claimant filed a workers' compensation claim with employer for an occupational disease, specifically, "medial compartment degeneration of the left knee." Employer denied the claim. Claimant sought a hearing, and an administrative law judge (ALJ) issued an order setting aside employer's denial. Employer appealed the order to the Workers' Compensation Board, and the board issued an order reversing the ALJ's order and reinstating employer's denial. The board's order was based on its conclusion that claimant had failed to prove, as required to establish a compensable occupational disease, that his "employment conditions were the major contributing cause of the disease." ORS 656.802(2)(a).[1]

Claimant seeks judicial review of the board's order, contending that the order is not supported by substantial evidence. *See* ORS 656.298(7); ORS 183.482(8)(c). We agree and, therefore, reverse and remand for reconsideration.

We begin with the relevant facts. Claimant has a history of injuries to both his right and left knees. The workers' compensation claim at issue in this case relates to a degenerative condition in claimant's left knee. The parties dispute whether that condition was caused, in major part, by claimant's employment conditions. Specifically, they dispute whether it was triggered by a work-related accident in 1977.

In 1977, while working for Montgomery Ward, claimant and a coworker were loading a 300-pound rototiller onto a truck when the coworker tripped, displacing the weight of the rototiller onto claimant. Claimant's right knee buckled, and he heard "a giant pop." Claimant continued working for two to three hours but eventually stopped because of pain and swelling in his right knee. Claimant went to a medical clinic, and a doctor determined that the patella of claimant's right knee had broken into several pieces. According to claimant, the accident also caused pain in his left knee, but it was "minimal pain" and "not nearly as bad"

---

[1] We refer to the current version of ORS 656.802 throughout this opinion because, although the statute has been amended since the events of this case, *see* Or Laws 2009, ch 24, § 1, the amendments do not affect our analysis.

as the pain in his right knee. Following the accident, claimant sought and received workers' compensation benefits for a right-knee condition. He was released to work approximately two to three months later.

In 1992, while working for Mohawk Paper, claimant suffered a left-knee injury. That injury was followed by surgery, which was performed by Dr. Walton. During the surgery, Walton discovered that "[t]here were still some shreds of [claimant's] anterior cruciate ligament present * * *, but [the ligament] was functionless." He also discovered degenerative changes in the medial compartment of claimant's knee.

In 2002, 2003, and 2004, while working for employer, claimant suffered additional work-related left knee injuries. The 2004 injury was followed by surgery, during which the surgeon observed "significant degenerative joint disease in [the] medial compartment."

In June 2005, claimant filed claims with employer for tears of the anterior cruciate ligament, lateral meniscus, and medial meniscus in his left knee related to the 2004 injury. Employer denied the anterior cruciate ligament tear but accepted the lateral and medial meniscus tears.

In July 2005, at employer's request, claimant submitted to an independent medical examination by Dr. James. In a July 2005 report, James diagnosed left knee medial and lateral meniscus tears, along with "[t]raumatic osteoarthritis of the left knee secondary to chronic anterior cruciate ligament laxity, most likely secondary to the injury described in [1977]." At the time of the report, James believed that claimant's left knee was the one that was seriously injured during the 1977 accident at Montgomery Ward.

James later realized that claimant's right knee was the one that was seriously injured in the 1977 accident, but he adhered to his opinion that the 1977 accident caused the degenerative condition in claimant's left knee. In a March 2006 report, James wrote that the 1977 accident "involved both lower extremities" and claimant had "very clearly describ[ed] what happened to his left knee." James also wrote that it remained his "strong opinion" that the 1977 accident

caused the degenerative condition in claimant's left knee. He explained:

> "After reconsidering the history given to me by the claimant and in spite of the fact that that the only medical documentation in regard to the injury of 1977 represents the right knee, it is still my strong opinion that the incident in 1977 is the major contributing cause to the chronic anterior cruciate ligament laxity noted in 1992 and the osteoarthritis noted in 1992. Any other conclusion simply does not make good sense medically."

James concluded:

> "[T]he injury incurred at work in 1977 as described to me by the worker did involve the left knee as well as the right lower extremity, and it is the only logical incident historically that could have resulted in the condition of the knee noted at surgery by Dr. Walton in 1992."

In a July 2006 deposition, James testified that, if claimant had not been injured in 1977, "then I need another date at that approximate time when the injury did occur, because obviously the findings [of degeneration] at surgery in 1992 took several years to develop and were not the result of the injury in April 1992."

In November 2006, claimant filed an occupational disease claim for medial compartment degeneration of the left knee, the claim at issue in this case. ORS 656.802(1)(a)(C) defines "occupational disease," in relevant part, as

> "any disease or infection arising out of and in the course of employment caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular employment therein, and which requires medical services or results in disability or death, including
>
> "* * * * *
>
> "(C) Any series of traumatic events or occurrences which requires medical services or results in physical disability or death."

To establish the compensability of an occupational disease, a claimant "must prove that employment conditions were the major contributing cause of the disease." ORS

665.802(2)(a); ORS 656.266(1) (claimant has the burden of proving that the occupational disease is compensable). Under the "last injurious exposure rule" of proof,[2]

"a claimant [may] prove the compensability of an injury without having to prove the degree, if any, to which exposure to disease-causing conditions at a particular employment actually caused the disease. *The claimant need prove only that the disease was caused by employment-related exposure.*"

*Roseburg Forest Products v. Long*, 325 Or 305, 309, 937 P2d 517 (1997) (citations omitted; emphasis added). Thus, an occupational disease claim may be based on the cumulative effect of all of the claimant's work-related exposure. *SAIF v. Henwood*, 176 Or App 431, 435, 31 P3d 1096 (2001), *rev den*, 333 Or 463 (2002). Prior work injuries may be considered as part of the overall employment conditions. *See Kepford v. Weyerhaeuser Co.*, 77 Or App 363, 366, 713 P2d 625, *rev den*, 300 Or 722 (1986).

Employer denied claimant's claim, and claimant requested a hearing before an ALJ. At the hearing, claimant testified that, during the 1977 incident at Montgomery Ward, his right knee was badly injured, and he also felt pain in his left knee, albeit "nothing compared to what was [in] the right leg."

Claimant had also testified about the 1977 incident at a prior hearing, a transcript of which the ALJ received into evidence. At the prior hearing, claimant testified, on cross-examination by employer's counsel, that the left knee injury that he suffered in the 1977 accident was the only left knee injury he suffered before 1992:

"[EMPLOYER'S COUNSEL:] [O]ther than the Montgomery Ward's 1977 claim for injury to your knee, of some extent, can you think of any other prior left-knee injuries that you've had?

---

[2] "The last injurious exposure rule is both a rule of proof and a rule of assignment of responsibility." *Roseburg Forest Products v. Long*, 325 Or 305, 309, 937 P2d 517 (1997) (citing *Runft v. SAIF*, 303 Or 493, 500, 739 P2d 12 (1987)). As a rule of assignment of responsibility, "it can be used to assign liability for [a] claim as between the claimant's employers." *SAIF v. Henwood*, 176 Or App 431, 434, 31 P3d 1096 (2001), *rev den*, 333 Or 463 (2002).

"[CLAIMANT:] Well, absolutely not. I received no medical attention, nothing, regarding my left knee, other than all the ones that are reported. And—

"[EMPLOYER'S COUNSEL:] So it would just be the 1977 claim?

"[CLAIMANT:] Would be the only possible—if there was a possible tie, that would be the only one."

The ALJ set aside employer's denial. Employer appealed to the board, and the board reversed, holding that claimant had failed to establish that the degenerative condition in his left knee was caused by a work-related injury. In its initial "Order on Review," the board explained its reasoning as follows:

"Claimant's theory of compensability for this claim relies in part on Dr. James's belief that he had a work-related injury in 1977, which caused the severe degenerative changes, including preexisting medial compartment disease, which were found during the 1992 surgery. However, there are no contemporaneous medical records indicating that claimant injured his left knee in 1977 or received any treatment for a left knee condition as a result of that incident. Claimant testified that the 1977 injury caused left knee pain, but nothing compared to what was in the right leg. At a prior hearing, claimant said that there was 'minimal pain' in the left knee after the 1977 incident.

"In [*Richard G. Pruitt*, 58 Van Natta 2635 (2006),[3]] relied on by claimant, the 1976 left knee injury, which contributed to the left knee condition, was clearly work-related. Here, however, we agree with [employer] that the preponderance of evidence does *not* establish that claimant's initial left knee injury, some time before 1992, was work-related. Claimant's testimony indicates that he had

---

[3] The board described *Pruitt* as follows:

"In *Pruitt*, one of the claims was for bilateral degenerative knee conditions. The claimant had a work-related injury and medial meniscectomy on the left knee in 1976. In 1999, the carrier accepted bilateral knee contusions, and the claimant subsequently filed an occupational disease claim for bilateral knee conditions. In *Pruitt*, we relied on the [last injurious exposure rule], and found that the medical evidence showed that the 1976 injury and subsequent surgery, as well as claimant's other work activities, contributed to the left knee condition. We concluded that the claimant's work activities, including the 1976 work injury, were the major contributing cause of his left knee condition."

only minimal left knee pain after the 1977 incident, and there is no evidence he sought any medical treatment for his left knee in connection with that incident. At most, Dr. James's reports indicate the possibility that claimant experienced a work-related injury to his left knee in 1977. *See Gormley v. SAIF*, 52 Or App 1055, 1060[, 630 P2d 407] (1981) (persuasive medical opinions must be based on medical probability, rather than possibility).

"In a deposition, Dr. James testified that, regardless of whether claimant's left knee was seriously injured in 1977 or not, there had to be an injury to that knee to cause the condition seen in 1992. We note that the 1992 reports from Dr. Walton indicated that claimant had an injury in 1988, which involved 'a mild stress to the left knee[.]' There is no evidence that the 1988 incident was work-related.

"Thus, the record indicates that the 1977 work incident caused 'minimal pain' to the left knee, and the 1988 non-work-related incident involved a 'mild stress to the left knee.' We are not persuaded that the preponderance of evidence demonstrates that the initial injury to claimant's left knee, which occurred some time before 1992, was work-related."

(Emphasis and some brackets in original; record citations omitted.)

Claimant sought reconsideration, challenging the board's finding that he sustained a left knee injury in 1988. After reviewing the evidence, the board agreed that claimant "did not have a left knee injury in 1988." Accordingly, in its "Order on Reconsideration," the board modified its initial order to delete any references to a 1988 left knee injury. But, the board otherwise adhered to its initial order, explaining:

"We adhere to our previous conclusion that claimant has *not* established that he experienced a work-related injury to his left knee at some time before 1992, and that any medical opinions relying on the fact that he sustained a work-related injury before 1992 are not persuasive. For the reasons discussed in our prior order, we continue to find that the medical evidence is not sufficient to establish that claimant's employment conditions were the major contributing cause of the medial compartment degeneration of the left knee."

(Emphasis in original.) This judicial review followed.

On review, claimant contends that the board's order is not supported by substantial evidence. *See* ORS 656.298(7); ORS 183.482(8)(c). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). For the reasons that follow, we conclude that the board's order is not supported by substantial evidence.

Claimant's claim was premised on four factual assertions: (1) the degenerative condition in his left knee was caused by an injury that occurred before 1992; (2) he suffered an injury to his left knee during the 1977 accident at Montgomery Ward; (3) that injury was sufficient to cause his degenerative condition; and (4) that injury was the only injury he suffered before 1992. The board accepted claimant's first assertion; it found that the degenerative condition in claimant's left knee was caused by an injury that occurred before 1992. But, the board apparently rejected the second assertion—that he suffered a left knee injury during the 1977 accident—and, as a result, the third and fourth assertions that were predicated on it—that the 1977 work-related left-knee injury was sufficient to cause his degenerative condition, and that it was only the left-knee injury he suffered before 1992. We conclude that the board's finding that the claimant did not suffer an injury to his left knee during the 1977 accident at Montgomery Ward is not supported by substantial evidence.

The board found that "at most, Dr. James's reports indicated the possibility that claimant experienced a work-related injury to his left knee in 1977." The record does not support that finding. James's unwavering position was that the degenerative condition in claimant's left knee was the result of an injury, and James concluded that the 1977 accident caused the degenerative condition; in other words, James concluded that the accident caused an injury and that the injury caused the condition. To review, in his March 2006 report—which was written with an understanding that the 1977 accident resulted in greater injury to claimant's right knee than his left—James reiterated his "strong opinion that the incident in 1977 is the major contributing cause to the chronic anterior cruciate ligament laxity noted in 1992 and

the osteoarthritis noted in 1992. Any other conclusion simply does not make good sense medically." And he concluded that

> "the *injury* incurred at work in 1977 as described to me by the worker did involve the left knee as well as the right lower extremity, and it is the only logical incident histori-cally that could have resulted in the condition of the knee noted at surgery by Dr Walton in 1992."

(Emphasis added.)

Thus, the board's finding that James's reports indi-cated, "at most," "the possibility that claimant experienced a work-related injury to his left knee in 1977" is not supported by substantial evidence. James's reports reflect his expert medical opinion that claimant's left knee was injured in 1977 and that the injury caused the degenerative condition in claimant's left knee. In his 2006 deposition, James did say that, if claimant had not been injured in 1977, "then I need another date at that approximate time when the injury did occur, because obviously the findings [of degeneration] at surgery in 1992 took several years to develop and were not the result of the injury in April 1992." But, that statement—which assumes a fact contrary to what claimant had told James and to what claimant testified—does not contradict James's opinion that the 1977 accident caused the degenera-tive condition in claimant's left knee. The board does not explain why, and we do not perceive why, James's opinion that the 1977 accident caused the degenerative condition is insufficient simply because it is contingent on a historical fact to which claimant himself had testified. Thus, to the extent that the board found that James's reports established only a medical possibility, that finding is not supported by the record.

*Gormley*, 52 Or App 1055, cited by the board, is inap-posite. In *Gormley*, the claimant sought workers' compensa-tion benefits for a condition that had two possible causes, one work related and one nonwork related. On *de novo* review, we held that the claimant had failed to prove that the condition was work related. *Id.* at 1061. As relevant here, we noted that the doctor, on whose opinion the claimant relied, had stated that "it [was] reasonable to assume" that claimant's work-related injury caused her condition, but that he "[would]

never be able to prove or disprove this," and we concluded that those statements "militate[d] against a finding of medical causation in terms of probability." *Id.* at 1060. Unlike in *Gormley,* in this case, James's medical opinion was not phrased as a reasonable assumption; it was phrased as a strong opinion. To the extent that the board found that any effect the 1977 accident had on claimant's left knee was not severe enough to cause the degenerative condition in that knee, the board also erred. What caused claimant's degenerative condition is, as the board noted, a complex medical question and, as such, requires expert medical opinion evidence. *See Uris v. Compensation Department*, 247 Or 420, 424, 427 P2d 753 (1967) ("where injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science and must necessarily be determined by testimony of skilled, professional persons" (internal quotation marks omitted)). The board can reject an expert's medical opinion as unpersuasive, but it must explain its reasons for doing so. It can, for example, reject an expert's medical opinion on the ground that the opinion is inconsistent with that of another expert, is based on an inaccurate medical history, or is conclusory. But the board cannot disregard an expert's medical opinion simply because it disagrees with the opinion as a matter of medical science. "The [b]oard is not an agency with specialized medical expertise entitled to take official notice of technical facts within its specialized knowledge." *SAIF v. Calder*, 157 Or App 224, 228, 969 P2d 1050 (1998). It "is not free to reach its own medical conclusions about causation[.]" *Benz v. SAIF*, 170 Or App 22, 27, 11 P3d 698 (2000) (board could not substitute its own medical opinion about the harmfulness of the claimant's previous exposure to noise for the medical opinion of the only expert who addressed the question); *see also SAIF v. Brown*, 177 Or App 113, 121, 33 P3d 336 (2001) (board erred in finding, without the support of expert medical opinion evidence, that claimant's "off-work stressors" had resolved and would not have any residual effect on her).

In this case, claimant presented expert medical opinion evidence (specifically, James's reports) that the 1977 accident, as described by claimant, resulted in a left knee injury

that caused the degenerative condition in his left knee. If, as it appears and as employer argues, the board found that claimant's 1977 left knee injury was not severe enough to cause the degenerative condition in that knee, the board erred. That finding is not supported by any medical evidence in the record.

Reversed and remanded for reconsideration.