Argued and submitted June 26, 1992, affirmed February 3, 1993

In the Matter of the Compensation of
Ronald H. Howard, Claimant.

**LP COMPANY**
and Liberty Northwest Insurance Corporation,
*Petitioners,*

*v.*

**DISDERO STRUCTURAL,**
Fireman's Fund Insurance
and Ronald H. Howard,
*Respondents.*

(90-10529, 89-24929, 90-10528, 89-24923;
CA A72514)

845 P2d 1305

Jenny Ogawa, Salem, argued the cause for petitioners.
With her on the brief was Kevin L. Mannix, P.C., Salem.

Jerry K. Brown, McMinnville, argued the cause for respondents Disdero Structural and Fireman's Fund Insurance. With him on the brief was Cummins, Brown, Goodman, Fish & Peterson, P.C., McMinnville.

David C. Force, Salem, argued the cause for respondent Ronald H. Howard. With him on the brief was Vick & Gutzler, Salem.

Before Richardson, Chief Judge, and Deits and Riggs, Judges.

DEITS, J.

**DEITS, J.**

Employer, LP Company (LP), seeks review of an order of the Workers' Compensation Board assigning it responsibility for claimant's back injury. We affirm.

Claimant has a history of work injuries. He suffered a compensable injury to his low back in 1984, while working for Disdero Structural (Disdero). Disdero accepted the claim, and a determination order issued in 1985, awarding claimant permanent partial disability (PPD). Claimant continued to experience symptoms. After hanging sheetrock for LP for three days in September, 1989, he sought treatment for low back and neck pain. Claimant's physician diagnosed "thoracolumbar sprain" and authorized his release from work. Claimant filed a claim for a new injury with LP and an aggravation claim with Disdero. Both employers denied responsibility, and an order under ORS 657.307 directed Disdero to pay claimant temporary benefits. Claimant sought review of both denials.

The Board adopted the referee's finding that

"[c]laimant's work on September 27, preceded by two days of hanging sheetrock resulted in claimant's demonstrating new pathology, being taken off work, and experiencing increased disability. This event occurred over an identifiable, discrete time period and activity so as to qualify it as an injury. *Donald Drake Co. v. Lundmark*, 63 Or App 261, 663 P2d 1303 (1983), *rev den* 296 Or 350 (1984); *Valtinson v. SAIF*, 56 Or App 184, 641 P2d 598 (1982). Thus, there was an identifiable 'incident' with objective signs and symptoms qualifying as an 'injury' under the new law. ORS 656.005(7). This finding is consistent with medical opinions * * *."

Because the Board found that claimant's work at LP "independently contributed to his current low back condition," it set aside LP's denial and remanded the case for acceptance as a new injury. LP seeks review of the Board's order.

Because this case involves a proceeding under ORS 656.307, both the Board's and this court's review is limited to errors of law. ORS 656.307(2); *Liberty Northwest Ins. Corp. v. Oregon Steel Mills*, 105 Or App 547, 550, 805 P2d 741 (1991). LP argues that the Board erred as a matter of law in concluding that claimant suffered a "new injury." It contends that in

1990, by enacting ORS 656.308(1) and amending ORS 656.005(7), the legislature made a change in what constitutes a "new injury" for purposes of shifting liability in responsibility cases.

■       ORS 656.308(1), enacted in 1990, provides:

"When a worker sustains a compensable injury, the responsible employer shall remain responsible for future compensable medical services and disability relating to the compensable condition unless the worker sustains a new compensable injury involving the same condition. If a new compensable injury occurs, all further compensable medical services and disability involving the same condition shall be processed as a new injury claim by the subsequent employer."

ORS 656.005(7)(a), defining a compensable injury, was amended in 1990 to require that proof of a compensable injury be established by objective medical evidence. It now provides:

"A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means, *if it is established by medical evidence supported by objective findings*[.]" (Emphasis supplied.)[1]

LP argues that these amendments changed the standard for establishing a new injury for purposes of shifting liability in a responsibility case. We have held that an injury can occur "during a discrete period, as compared to the onset of an occupational disease over a long period of time." *Valtinson v. SAIF*, 56 Or App 184, 188, 641 P2d 598 (1982). In *Valtinson*, we held that a claimant with a history of back problems suffered a new compensable injury to his low back when he experienced symptoms after driving on the job for several hours. We said that an injury need not necessarily occur suddenly or instantaneously. 56 Or App at 187. It is

---

[1] The pre-1990 version of ORS 656.005(7)(a) provided, in part:

"A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means."

LP's position that, because of the 1990 changes, this case law is no longer viable. It contends that, under the amended statutes, an injury can only be precipitated by a sudden, unexpected, traumatic event.

The new statutory language relied on by LP may make proof of a compensable injury somewhat more difficult. Under ORS 656.005(7)(a), proof of the injury must now be by objective medical findings. However, we do not agree with LP's argument as to the effect of the new language. There is nothing in ORS 656.308(1) or in ORS 656.005(7), as amended, that requires a change in the principle established by case law that an injury need not be instantaneous.

■      LP argues that its interpretation is correct, because any other reading of the statutes would render meaningless the statutory provisions concerning an occupational disease, specifically, ORS 656.802(1)(c). That provision defines an occupational disease as

> "any disease or infection arising out of and in the course of employment caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, and which requires medical services or results in disability or death, including:
>
> "* * * * *
>
> "(c)  Any series of traumatic events or occurrences which requires medical services or results in physical disability or death."

LP contends that ORS 656.802(1)(c) was intended to include any repetitive trauma as an occupational disease and, accordingly, repetitive trauma can never be an injury. We disagree. The occupational disease statute does not contain a temporal requirement. In contrast, an *injury* based on repetitive trauma must develop within a discrete, identifiable period of time due to specific activity. There is no indication either in the language of the statutes or in the legislative history that the legislature intended to do away with this distinction.

The Board did not err in concluding that claimant suffered a new injury while working for LP. Therefore, it

properly concluded that responsibility for claimant's condition shifted from Disdero to LP.

Affirmed.