Argued and submitted August 2, 2010, affirmed March 2, 2011

In the Matter of the Compensation of
Tony L. Fairbanks, Claimant.

DYNEA USA, INC.,
*Petitioner,*

*v.*

Tony L. FAIRBANKS,
*Respondent.*

Workers' Compensation Board
0701731; A141297

250 P3d 389

Jerald P. Keene argued the cause and filed the briefs for petitioner.

Rogelio Cassol argued the cause for respondent. On the brief were Christine Jensen and Malagon, Moore & Jensen.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.*

ROSENBLUM, J.

* Wollheim, J., *vice* Haselton, J.

## ROSENBLUM, J.

This case requires us to determine whether the Workers' Compensation Board correctly concluded that claimant's condition—a methicillin resistant staphylococcus aureus (MRSA) infection—was an injury as opposed to a disease for purposes of the Workers' Compensation Law. For a disease to be compensable, employment conditions must be the major contributing cause of the disease, ORS 656.802(2)(a), whereas, for an injury to be compensable, work need only be a material contributing cause of the injury, *Coleman v. SAIF*, 203 Or App 442, 446, 125 P3d 845 (2005). The board concluded that claimant's MRSA infection was an injury, that his employment was a material contributing cause of that injury, and that the injury was compensable. Employer seeks judicial review, arguing that claimant's infection was a disease, not an injury, and that the board thus erred in applying the "material contributing cause" standard. We affirm.

As part of employer's safety procedures, claimant, a millwright, was required to wear steel-toed boots while working. Each year, claimant would purchase a new pair of the same particularly sturdy brand of boots, which would generally take two to three months to properly break in. Over the past six to seven years of wearing those boots, claimant had never developed any problems when breaking in a new pair. However, while working on the afternoon of December 12, 2006, claimant was wearing boots that he had been breaking in for approximately two and a half months, when he felt some discomfort on his left shin. At the end of the workday, he pulled his sock down after removing his boot and noticed a "large red area below the top of the boot, not knowing what it [was]."

Claimant continued to work over the next few days, although the red area became increasingly swollen and sore to the point that claimant had trouble walking. The sore gradually developed into a pustule that, on the evening of December 15, 2006, "broke" into a lesion with discharge, prompting claimant to seek treatment the next morning. Claimant sought medical treatment on three occasions between December 15 and December 19, at which time he

was hospitalized and administered intravenous antibiotics for a persistently symptomatic MRSA infection.

At the request of employer, Dr. Leggett, an infectious disease expert, performed an independent review of claimant's medical records. Leggett explained that in order for a MRSA infection to occur, the skin must be colonized by the bacteria prior to any break in the skin. Leggett further stated that, in his opinion, claimant could not have contracted a MRSA infection if he had not already been colonized by MRSA bacteria, "which has no occupational predisposition." Therefore, Leggett concluded that the MRSA bacteria was colonizing claimant before December 12, and thus, "I believe it is more likely than not that [claimant's] infection was not related to his work or workplace."

In contrast, claimant's treating physician, Dr. Abraham, wrote to claimant's counsel that, in his opinion, the work boot, and more specifically, the "boot-caused abrasion" that claimant noticed on December 12, 2006, was the major contributing cause of claimant's need for treatment. In a later deposition, Abraham agreed with Leggett that claimant was likely colonized by MRSA bacteria prior to December 12, 2006, and that the bacteria could have originally come from anywhere. Notwithstanding those observations, Abraham adhered to his earlier opinion that the day of boot rubbing at work was the inciting event that caused a need for treatment. Abraham also considered that claimant had been breaking in his new boots for over two months before the infection occurred, but stated that that fact did not change his opinion that it was the boot rubbing on December 12, rather than chafing or rubbing over a longer period of time, that allowed the MRSA to enter the skin and cause claimant to need treatment. He acknowledged that claimant's case was "not straightforward," but opined that, based on the area of the wound, it was more clinically likely that the work boot was involved in causing the need for treatment.

Employer denied claimant's workers' compensation claim for a "MRSA infection. Left shin" caused by "boot irritation." Claimant requested a hearing, which was held on September 7, 2007. Relying on Leggett's opinion that claimant's skin was likely colonized with MRSA bacteria for some

time prior to December 12, the administrative law judge (ALJ) concluded:

> "[T]he medical evidence indicates that a MRSA infection, the claimed condition, was likely present for a lengthy period of time before causing any symptoms. Under these circumstances, I conclude that claimant's condition is properly analyzed as an occupational disease."

(Internal citations omitted.) The ALJ then concluded that claimant's work activities were not the major contributing cause of his infection, and upheld the self-insured employer's denial of the claim.

The board reversed. Relying on Abraham's opinion, the board reasoned that the infection most likely arose at the same time that claimant's symptoms did, on December 12, 2006. The board thus determined that claimant's condition was an injury and compensable under the material contributing cause standard. *SAIF v. Pepperling*, 237 Or App 79, 84, 238 P3d 1013 (2010) (standard of compensability for an industrial injury is material contributing cause).[1]

Employer seeks judicial review, assigning error to the board's conclusion that claimant's condition was an injury rather than a disease. In support of that assignment, employer makes three alternative arguments. First, it argues that, under ORS 656.802(1)(a), an infection is always a disease, as a matter of law. Second, it argues that, even if an infection can be an injury, claimant's condition constituted a disease because it began when he was exposed to the MRSA bacteria and developed gradually. Finally, it contends that, even if the onset of claimant's condition coincided with when he first developed symptoms, as the board found, it still constituted a disease rather than an injury because the condition developed gradually over the course of four days.

---

[1] In *Pepperling*, the question, as framed by the parties, was whether the claimant's MRSA infection was an injury or a consequential condition. 237 Or App at 82. We decided, based on the medical evidence presented in that case, that substantial evidence supported the board's determination that the MRSA infection was an injury and not a consequential condition, to which the higher, major contributing cause standard of proof applies. *Id.* at 85.

■      We begin with employer's first argument. Employer argues that, as a matter of law, the board's analysis of claimant's MRSA infection as an injury contravenes the definition of "occupational disease." That is true, employer argues, because the occupational disease statute, ORS 656.802(1)(a), expressly defines "occupational disease" to include *any infection*.[2] We resolve employer's first argument consistently with our reasoning in *Weyerhaeuser Co. v. Woda*, 166 Or App 73, 998 P2d 226, *rev den*, 330 Or 361 (2000).

In *Weyerhaeuser*, the employer contended that a sudden allergic reaction to wood dust should be analyzed as a disease rather than an injury, because the text of the occupational disease statute demonstrated legislative intent that all claims resulting from inhalation of dust be treated as "diseases or infection." *Id.* at 81; ORS 656.802(1)(a)(A) (referring to an "occupational disease" as including "any disease or infection" caused by inhalation of dust). We disagreed, reasoning that the term "disease" as used in that statute, while having never been defined by the legislature, has acquired a "definitional patina" throughout Oregon's case law. *Weyerhaeuser*, 166 Or App at 82; *Smirnoff v. SAIF*, 188 Or App 438, 448, 72 P3d 118 (2003) (explaining our reasoning in *Weyerhaeuser*). In the absence of a legislative definition, we explained, the Oregon courts have consistently distinguished between a "disease" and an "injury" by reasoning that diseases are gradual, rather than sudden, in onset. *Weyerhaeuser*, 166 Or App at 80-81 (citing *O'Neal v. Sisters of Providence*, 22 Or App 9, 537 P2d 580 (1975), as endorsed by the Supreme Court in *James v. SAIF*, 290 Or 343, 614 P2d 565 (1981)). Thus, we construed the term "disease," as modified by the term "any" in ORS 656.802(1)(a) and (1)(a)(A), to encompass only conditions the symptoms of which are gradual in onset. *Weyerhaeuser*, 166 Or App at 80-81. We held that the symptoms of claimant's condition, although caused by means described in the occupational disease statute—specifically,

---

[2] ORS 656.802(1)(a) defines an "occupational disease" as

"*any disease or infection* arising out of and in the course of employment caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, and which requires medical services or results in disability or death[.]"

(Emphasis added.)

the inhalation of dust, *see* ORS 656.802(1)(a)(A)—were sudden in onset and therefore properly analyzed by the Board as an injury. *Id.* at 83. Although we later clarified in *Smirnoff*, 188 Or App at 447-49, that the language we used in *Weyerhaeuser* was imprecise to the extent that it focused on the onset of claimant's symptoms—rather than the onset of the condition—*Weyerhaeuser*'s review of the legislative history and case law is correct; Oregon courts define occupational diseases as those conditions that occur gradually, rather than suddenly.[3]

More relevant to this case, the term "infection," as modified by the term "any" in ORS 656.802(1)(a), has likewise never been defined by the legislature but has been interpreted by Oregon courts, at least implicitly, in a manner consistently with the term "disease." As we stated in *O'Neal*,

> "in Oregon an occupational disease continues to be distinguished from a compensable injury in that the former must be a '*disease or infection*,' whereas the latter must constitute an 'accidental injury.' * * * What sets occupational diseases apart from accidental injuries is both the fact that they can not honestly be said to be unexpected, since they are recognized as an inherent hazard of continued exposure to conditions of the particular employment, and the fact that they (are) gradual rather than sudden in onset."

22 Or App at 15-16 (internal quotation marks and citations omitted; emphasis added). *See also Dethlefs v. Hyster Co.*, 295

---

[3] To that extent, we reject employer's argument that *Weyerhaeuser* "was essentially disavowed in *Smirnoff*." In *Smirnoff*, the employer argued that *Weyerhaeuser* stands for the proposition that, in determining if a condition is an injury or occupational disease, the proper examination is whether the symptoms of the condition were sudden or gradual. 188 Or App at 447. We responded: "To the extent that the language we used in *Weyerhaeuser* was imprecise in focusing on the onset of claimant's symptoms, rather than the onset of the condition, to determine the nature of the claim, we disavow it." *Id.* at 447-48. Nevertheless,

> "[o]ur conclusion in *Weyerhaeuser Co.* was correct in light of the nature of the condition for which compensation was sought, which the board described as 'an immediate reaction to exposure to wood dust.' * * * The proper inquiry is whether the condition itself, not its symptoms, occurred gradually, rather than suddenly. We would note that, because the onset of the symptoms and the condition in *Weyerhaeuser Co.* coincided, to the extent our focus on the onset of claimant's symptoms was incorrect, it made no difference in the outcome of the case."

*Id.* at 448-49 (internal citations omitted). Thus, *Weyerhaeuser* is still good law for its discussion of the history of the occupational disease statute.

Or 298, 307, 667 P2d 487 (1983) (stating, without elaboration, that "It should also be kept in mind that a disease or infection may give rise to a compensable claim for injury rather than for occupational disease."); *K-Mart v. Evenson*, 167 Or App 46, 1 P3d 477, *rev den*, 331 Or 191 (2000) (analyzing claim as an industrial injury where a worker was put at risk of possible infection by HIV and hepatitis when her hands, which had sores on them, were exposed to a customer's bodily fluids). Thus, employer's argument that an infection can never be an injury does not square with how the phrase "any disease or infection" has been interpreted. The proper analysis of whether an infection constitutes a disease does not differ from the analysis applied to a disease; in either case, the relevant distinction is "whether the *condition* developed gradually or as the result of a discrete event." *Smirnoff*, 188 Or App at 449 (emphasis in original).

Employer's remaining arguments involve the board's application of that inquiry. First, employer argues that, even if an infection can be an injury, the board erred in reversing the ALJ because the ALJ "correctly determined that claimant's 'MRSA condition' developed gradually, commencing with some prior exposure and infestation by MRSA bacteria on his skin that eventually manifested in the symptoms claimant first 'noticed' on December 12, 2006." In the alternative, employer contends that even if claimant's condition arose on December 12, his claim should, nevertheless, be analyzed as a disease because the condition still developed gradually, over the course of four days. Claimant responds that we should affirm the board's order, because substantial evidence in the record supports the board's, not the ALJ's, conclusions regarding the onset of claimant's MRSA infection.

We review the board's findings with regard to the onset of claimant's condition to determine whether they are supported by substantial evidence, or in other words, to determine whether the record, viewed as a whole, would permit a reasonable person to make the factual findings made by the board. ORS 656.298(7). We cannot substitute our view of the evidence for that of the board. *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990). If there are doctors on both sides of a medical issue, as there are in this case,

"whichever way the Board finds the facts will probably have substantial evidentiary support." *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988). We will overturn the board's decision only if "the credible evidence apparently weighs overwhelmingly in favor of one finding" and the board finds the other without providing substantial reason in the order for doing so. *Id.*

In this case, the board chose to rely on Abraham's opinion in determining that the onset of claimant's MRSA infection—the claimed condition—occurred coincident with the onset of claimant's symptoms on December 12, 2006, rather than at some earlier date, as was suggested by Leggett. The board explained:

"Here, it is unlikely that claimant had an MRSA infection before the discrete onset of symptoms on December 12, 2006. Indeed, according to Dr. Abraham, his most recent treating physician, claimant probably did *not* have an MRSA infection before December 12, 2006. Dr. Abraham's opinion in this regard is unrebutted. The contemporaneous medical records describing the mechanism of claimant's injury (*i.e.*, the rubbing of his left work boot while working on December 12, 2006) support Dr. Abraham's opinion, as do claimant's objective findings of infection, which appeared that day, not before.

"Under these circumstances, based on claimant's credible reporting and Dr. Abraham's unrebutted, persuasive opinion, we conclude that the onset of claimant's MRSA infection was sudden, *not* gradual. Consequently, claimant's condition is properly analyzed as an accidental injury under ORS 656.005(7)(a). *See Donald Drake Co. v. Lundmark*, 63 Or App 261, 266 (1983), *rev den*, 296 Or 350 (1984) (the claimant's back trouble coincided with jolting of the faulty loader, the fact that it grew worse over his subsequent employment did not make it 'gradual in onset')."

(Record citations and footnotes omitted; emphasis in original.) The board further explained why it considered Leggett's opinion to be unpersuasive.

"The doctor's conclusion does not follow from his premises: He apparently attributed the infection in part to the boot abrasion (which occurred at work), but then said that the infection was unrelated to work. * * * Because Dr. Leggett's

reasoning focuses on the bacteria only and does not address the *infection*, we find no persuasive reason to discount Dr. Abraham's opinion relating the infection to the undisputed bacteria *and* the rubbing of claimant's work boot on December 12, 2006."

(Emphasis in original.)

We conclude that those reasons for relying on the opinion of Abraham are persuasive. We also conclude that substantial evidence supports the board's factual finding that the onset of claimant's condition was sudden, coinciding with the onset of his symptoms on December 12, 2006. The fact that claimant's symptoms grew worse over four subsequent days of work did not make the condition "gradual in onset." *See LP Company v. Disdero Structural*, 118 Or App 36, 38, 845 P2d 1305 (1993) (back and neck pain that developed over three days of hanging sheetrock compensable as an injury); *Donald Drake Co.*, 63 Or App at 266. Claimant's condition was properly analyzed by the board as an injury.[4]

Affirmed.

---

[4] We disagree with employer that our decision in *Murdoch v. SAIF*, 223 Or App 144, 194 P3d 854 (2008), *rev den*, 346 Or 361 (2009), compels a different result. In *Murdoch*, the claimant, who had diabetes, developed a blister on his toe from repeated rubbing inside his boot. *Id.* at 147. The blister became infected, and the infection ultimately led to the need for amputation of the toe. *Id.* The claimant filed a claim for an occupational disease, and the issue on review was whether claimant's diabetes was the major contributing cause of his condition or a mere susceptibility; whether the infection was a disease or injury was never at issue in that case, nor was it discussed to any degree. *Id.* at 146. For that reason alone, *Murdoch* does not apply here. We also note that the claimant in *Murdoch*, unlike claimant in this case, could not trace the onset of his infection back to a specific triggering event. *Id.* at 149. In other words, *Murdoch* is also distinguishable in that there were no facts in that case upon which we could have based a determination that the claimant's condition arose over a discrete period of time. *See Donald Drake Co.*, 63 Or App at 266. Thus, employer's argument that *Murdoch* is analogous to this case is not well taken.