Argued and submitted January 21, affirmed July 22, 2015

In the Matter of the Compensation of
Mark A. Luton, Claimant.

Mark A. LUTON,
*Petitioner,*

*v.*

WILLAMETTE VALLEY
REHABILITATION CENTER,
*Respondent.*

Workers' Compensation Board
1002303, 1003063; A155280

356 P3d 150

Dale C. Johnson argued the cause and filed the brief for petitioner.

Rebecca A. Watkins argued the cause for respondent. With her on the brief was Sather, Byerly & Holloway, LLP.

Before Lagesen, Presiding Judge, and Flynn, Judge, and De Muniz, Senior Judge.

FLYNN, J.

**FLYNN, J.**

Claimant seeks review of an order of the Workers' Compensation Board (board) that reinstated and upheld employer's denial of a claim for a right wrist injury. Claimant argues that the board erred in analyzing his right wrist condition as an occupational disease, both in failing to give adequate weight to the sudden onset of symptoms and because the finding of gradual onset is not supported by substantial evidence or substantial reason. We affirm.

## BACKGROUND

We state the facts consistently with the board's unchallenged factual findings.[1] Claimant worked for employer Willamette Valley Rehabilitation Center (employer) from December 1994 to October 2010. His work duties included stacking wood, operating a nail gun, cutting wood with a saw, and wrapping bundles of sticks (the sticks job). For the sticks job, claimant held an elastic band in his left hand while he held and rotated a bundle of sticks with his right hand so that the sticks became wrapped inside the band. Throughout 2008, claimant experienced bilateral wrist pain during occasions when employer assigned him to the sticks job, but claimant primarily worked for employer as a sawyer, a job that involved repetitively cutting boards on a table saw.

On April 5, 2010, claimant was assigned to the sticks job. Claimant developed pain that day in his right wrist and later testified that he felt as though the work was "tearing" his "cartilage." Claimant worked again at the sticks job on April 6 and experienced more pain. On April 7, 2010, claimant continued performing the sticks job. At the end of that shift, his right wrist was very painful, and he advised employer of his right wrist pain. Claimant submitted a form to employer on April 10, 2010, stating that he had injured his right wrist while doing the sticks job on April 5, 2010. Claimant later filed an "827" workers' compensation claim form for "wrist pain bilaterally" caused by wrapping "sticks with nylon banding tight" on April 5, 2010, "after lunch." Claimant took some time off of work

---

[1] The board adopted the administrative law judge's factual findings.

and, when he returned, he was assigned to a different job. On May 26, 2010, employer denied claimant's right wrist pain claim, which is the subject of the pending dispute.[2] Claimant's last day of work for employer was October 27, 2010.

Although claimant initially saw doctors who diagnosed the wrist pain as either related to a cyst in claimant's wrist or as tendonitis, his right wrist symptoms continued, and an MRI arthrogram performed in September 2010 showed that the triangular fibrocartilage (TFC) in his right wrist was possibly abnormal. On November 3, 2010, Dr. Dodds performed arthroscopic surgery, during which he discovered a "fairly large central tear of the [TFC] with the head of the ulna exposed in the defect" and repaired the tear. Claimant's right wrist symptoms significantly improved after the surgery.

Dr. Button, a hand and upper-extremity expert retained by employer, examined claimant and reviewed his medical records. Button took x-rays that revealed a "pre-existing abnormality likely related to a childhood wrist fracture with shortening of the radius, resulting in a secondary prominence of the ulna, termed ulnar positive variance, causing an ulnar impaction syndrome." In Button's opinion, the bone-length variance, combined with activities of daily living, "impacted, compressed, and squeezed" the cartilage, leading to thinning and, ultimately, tearing.

Although there was a significant dispute regarding Button's assumption that the ulnar variance resulted from an undiagnosed childhood wrist fracture, Dodds agreed that claimant has a positive ulnar variance and that the variance "may be regarded as representing a predisposition for thinning of the [TFC] produced by both repetitive work activities as well as a lifetime of normal usage." Ultimately, Dodds opined that he was "unable to say with certainty when or where the wrist cartilage tear treated by surgery occurred," but that claimant's work activities in April 2010 "represent the major contributing cause of the need for surgery."

---

[2] Employer also issued a denial of claimant's left wrist condition, but claimant did not challenge that denial at hearing.

Following a hearing held in July 2012, the administrative law judge (ALJ) concluded that claimant's right wrist claim should be analyzed as an injury, rather than an occupational disease, because "claimant's symptomatic right TFC tear requiring surgery, as distinct from his prior asymptomatic right TFC condition, probably developed during the discrete period of performing the sticks [job] from April 5, 2010 to April 7, 2010." He credited Dodds's opinion as establishing that claimant's work activities were at least the material contributing cause of that condition and set aside employer's denial of the right wrist claim. On review, the board adopted the ALJ's findings of fact but reinstated the denial. The board determined that the claim should be analyzed as one for an occupational disease because the pertinent condition was "claimant's right TFC tear [which] is not traceable to an identified work event or discrete period." The board found that claimant failed to prove that his work activities were the major contributing cause of the tear—as required to prove a compensable occupational disease, ORS 656.802(2)(a)—and upheld employer's denial.

## DISCUSSION

On judicial review, claimant challenges various aspects of the board's determination that claimant's TFC tear should be analyzed as an occupational disease. Claimant argues both that the board was required to assign greater relevance to the sudden onset of symptoms in evaluating when the TFC tear occurred, and that the board's finding of a gradual onset is not supported by substantial evidence or substantial reason. We review the board's legal conclusions for legal error and its determinations on factual issues for substantial evidence, which includes substantial reason. ORS 183.482(8); *Cummings v. SAIF*, 197 Or App 312, 318, 105 P3d 875 (2005).

Whether a claim is most appropriately analyzed as one for an occupational disease or an injury turns on whether the "condition" is traceable to a discrete period or developed gradually over time. *Smirnoff v. SAIF*, 188 Or App 438, 443, 72 P3d 118 (2003). As an initial matter, we emphasize

that claimant does not urge us to adopt the ALJ's focus on the "symptomatic right TFC tear requiring surgery" as the pertinent "condition." The ALJ emphasized that a condition must require medical services or result in disability or death to be compensable. ORS 656.005(7)(a); ORS 656.802(1)(a). But the ALJ's focus on symptoms as the condition is inconsistent with our decision in *Smirnoff*, in which we held that the claimant, who suffered from an asymptomatic meniscal tear that became symptomatic during a discrete work episode, presented a claim for an occupational disease because the meniscal tear occurred gradually. 188 Or App at 449. *Smirnoff* emphasizes that the onset of the symptoms is "one consideration in determining the nature of the onset of the condition," but that the condition is not just the symptoms. *Id.* at 444.[3]

Claimant, nevertheless, emphasizes our statement in *Smirnoff* that "the degree of the relevance of the onset of symptoms to determine the nature of the onset of the condition will vary depending on the circumstances, in particular the nature of the condition." *Id.* at 446. Claimant argues that Dodds was uncertain about whether the onset of the tear was sudden or gradual and that Dodds's uncertainty makes this a case in which "the relevancy of the onset of symptoms would be great." However, the board did not share claimant's interpretation of the medical evidence. The board supported its finding that claimant's TFC tear developed gradually by pointing to Dodds's statement that thinning of the TFC could have been caused by work activities "as well as a lifetime of normal usage," and Button's opinion that claimant's ulnar variance caused compression, squeezing, and a gradual wearing away of the TFC with "activities of daily living." The board's finding is supported by substantial evidence and, consequently, substantial reason, because the board explained how its findings of fact related to its legal

---

[3] We note that a diagnosed condition would not have been required for claimant to litigate the claim he filed for "right wrist pain." *See Boeing Aircraft Co. v. Roy*, 112 Or App 10, 14, 827 P2d 915 (1992) (claimant could prove pain symptoms were a compensable injury without proving a specific medical diagnosis to explain the symptoms). However, our cases require that, once the source of the pain was diagnosed, claimant needed to prove that the diagnosed condition was compensable.

conclusions.[4] Accordingly, the board did not err in analyzing claimant's condition as an occupational disease.

Affirmed.

---

[4] Claimant's argument that the board's opinion lacked substantial reason depends on claimant's characterization of the facts. Because the board made alternate factual determinations that were supported by substantial evidence, claimant's substantial reason argument is inapposite.