GARRETT, J.
*75 Claimant seeks review of an order of the Workers' Compensation Board concluding *767 that his shoulder condition is compensable as an occupational disease and not also as an accidental injury. For the reasons that follow, we conclude that substantial evidence supports the board's finding that claimant's shoulder condition developed gradually and, therefore, that the board did not err by analyzing compensability using only an occupational-disease analysis. Accordingly, we affirm.
We review the board's order for substantial evidence and legal error, ORS 656.298(7) ; ORS 183.482(8), and for substantial reason, SAIF v. Martinez , 219 Or. App. 182, 184, 182 P.3d 873 (2008). "We state the facts consistently with the board's unchallenged factual findings." SAIF v. Durant , 271 Or. App. 216, 218, 350 P.3d 489 (2015), rev. den. , 358 Or. 69, 363 P.3d 500 (2015).
Claimant is a maintenance worker in apartment buildings, and his employer is insured by respondent SAIF. His previous jobs included employment as an apprentice and journeyman sheet-metal worker, during which he spent three to four years performing overhead work between 70 and 80 percent of the time.
One day, while locking an apartment door, claimant developed pain and "heard and felt a pop in [his] right shoulder." He sought treatment the same day and reported that he had experienced some soreness in his shoulder for the previous two weeks, but that he did not otherwise have any right shoulder issues. A physician interpreted an MRI of claimant's shoulder to show "full thickness tears" in two of claimant's right rotator cuff tendons, among other physiological abnormalities in his shoulder. He soon began physical therapy targeted at his right shoulder, and his orthopedist recommended rotator cuff repair surgery.
Claimant filed two claims for workers' compensation benefits for his right shoulder. He first filed an accidental-injury claim for a "right shoulder injury," which SAIF denied. Six months later, claimant filed an occupational-disease claim for a "right rotator cuff tear and right subscapularis *76 tear," which SAIF also denied. Following the second denial, claimant requested a hearing. The claims were consolidated for a hearing before an administrative law judge (ALJ).
Before the ALJ, SAIF argued that claimant had a preexisting arthritic shoulder condition that combined with the work incident and that the work incident was not a "major contributing cause of the need for treatment of the combined condition." See ORS 656.005(7)(a)(B) (providing that, if an "otherwise compensable injury combines at any time with a preexisting condition to cause or prolong disability or a need for treatment, the combined condition is compensable only if, so long as and to the extent that the otherwise compensable injury is the major contributing cause of the disability of the combined condition" or "the need for treatment of the combined condition"). SAIF relied on the opinion of Dr. Toal, who opined that claimant's treatment had primarily been for "preexisting rotator cuff disease," and that an arthritic bone spur had caused "gradual wear and tear of th[e] [supraspinatus] tendon eventually leading to the tear." SAIF further argued that claimant did not have persuasive evidence that his lifelong work activities were the major contributing cause of his right shoulder "conditions."
Claimant relied on the testimony of Dr. Puziss. Puziss opined that the door-lock incident had caused claimant to sustain acute tears that were superimposed on preexisting partial tears caused by occupationally related overuse of the right shoulder over "many years." Puziss noted that it was not possible to determine with certainty the extent to which claimant's rotator cuff was torn prior to the door-lock incident, including whether there was any full thickness tearing before that time. Puziss opined that rotator-cuff degeneration and partial tearing were consistent with claimant's past work activities, including the overhead work that claimant performed as a sheet-metal worker. Puziss further opined that claimant's activities as a maintenance worker were capable of contributing to the progression of the tears and that the door-lock incident was also capable of worsening the partial tears, resulting in the full-thickness tearing. Puziss further stated that the bone spur was "not large *768 enough to cause gradual wear and tear of the supraspinatus tendon." *77 The ALJ found Puziss's opinion to be the most persuasive because Puziss "had an accurate history regarding the mechanism of injury," and because "he based his opinion on the objective medical evidence" and an "accurate understanding of the nature, type and duration of claimant's work activities over his lifetime." The ALJ rejected SAIF's argument that the degenerative pathology of claimant's rotator cuff tendons and muscles qualified as a preexisting condition and found that claimant's arthritis was not a contributor to claimant's disability or need for treatment. The ALJ set aside SAIF's denial of both claimant's injury claim and his occupational-disease claim, concluding that the harm caused by the door-lock incident qualified as an injury and the underlying degeneration qualified as an occupational disease.
SAIF appealed the ALJ's order to the board. To determine whether the ALJ erred in finding both claims compensable, the board reviewed the medical evidence and the record to determine which standard or standards to apply, stating as follows:
"Despite a claimant's chosen theory of compensability, it is our obligation as fact finder to review the medical evidence and the record to determine the appropriate legal standard to evaluate the compensability of a claim."
(Citing, inter alia , DiBrito v. SAIF , 319 Or. 244, 248, 875 P.2d 459 (1994) ).
Like the ALJ, the board found Puziss's opinion to be the most persuasive-that "claimant's rotator cuff tears * * * were caused by his work activities over time, in combination with the June 2013 injury incident." The board observed that an "occupational disease" is defined to include "[a]ny series of traumatic events or occurrences which requires medical services or results in physical disability or death," ORS 656.802(1)(a)(c), and that, "[w]ork injuries may be considered among 'employment conditions' when evaluating the major contributing cause of an occupational disease." (Citing, inter alia , Hunter v. SAIF Corp. , 246 Or. App. 755, 760, 268 P.3d 660 (2011) ). The board reasoned that Puziss's opinion as to the cause of claimant's condition was "consistent with *78 'a series of traumatic events or occurrences' " such that "an occupational disease analysis is applicable." The board then reasoned that Puziss's opinion as to the cause of claimant's condition "is the one that advances the compensability of claimant's claimed condition," and, therefore, the board decided to "analyze the disputed claim under an 'occupational disease' standard." (Emphasis added.)
The board went on to conclude that claimant's condition was a compensable occupational disease because the evidence established that his employment activities were the major contributing cause of his shoulder condition. Consequently, the board affirmed the portion of the ALJ's order finding claimant's occupational-disease claim compensable and reversed the portion finding claimant's injury claim compensable. The board also decreased claimant's attorney and claim processing fees to accurately reflect the costs and services relating to a single claim.
On review, claimant argues that the board erred in denying his injury claim because the medical evidence established that he both sustained a compensable accidental injury and suffered from a compensable occupational disease. Claimant contends that he is entitled to acceptance of both claims, arguing that the evidence establishes the existence of an occupational disease consisting of the degeneration to his shoulder and an injury consisting of tears to his already-degenerated rotator cuff tendons. SAIF responds that substantial evidence supports the board's finding that claimant's condition developed gradually due to a series of traumatic occurrences, the last of which was the door-lock incident and, therefore, the board correctly applied an occupational-disease analysis to find claimant's right shoulder condition compensable solely as an occupational disease.
Claimant characterizes the board's order as "subject[ing]" claimant's condition to "an either/or analysis * * * when he had both a compensable injury and [a] compensable occupational disease." In other words, claimant interprets the board's order to conclude that *769 his shoulder condition could never be compensable as both an injury and an occupational disease. We disagree with that characterization. As we understand the board's opinion, the board concluded that *79 the accidental-injury standard for compensability was not applicable because the medical evidence did not show that claimant's need for medical treatment was caused by an accidental injury, as that term is used in the workers' compensation law. See Jewell v. SAIF , 291 Or. App. 703, 705, 422 P.3d 388 (2018) ("When, as here, the medical evidence identifies a condition causing the claimant's symptoms and establishes that the condition developed gradually over time, the claimant has not experienced an injury, and the claim must be analyzed as an occupational disease.").
When an "injury" is claimed to have resulted from "repetitive trauma," the medical evidence must establish that it "develop[ed] within a discrete, identifiable period of time due to specific activity." LP Company v. Disdero Structural , 118 Or. App. 36, 40, 845 P.2d 1305 (1993) ; see also Smirnoff v. SAIF , 188 Or. App. 438, 449, 72 P.3d 118 (2003) ("In determining whether [a] condition should be characterized as an injury or an occupational disease, the inquiry is whether the condition developed gradually or as the result of a discrete event." (Emphasis omitted.) ). Thus, by concluding that an accidental-injury analysis did not apply, the board implicitly found that claimant's rotator-cuff tears did not develop within a discrete, identifiable time period. Puziss testified that claimant's rotator cuff tears had developed over "many years" and that it was not possible to determine with certainty the extent to which claimant's rotator cuff tendons were torn prior to the door-lock incident. The board credited Puziss's explanation as to the cause of claimant's shoulder condition. Thus, from Puziss's testimony, the board could reasonably infer that claimant's rotator-cuff tears did not develop within a discrete, identifiable time period. See Benz v. SAIF , 170 Or. App. 22, 26, 11 P.3d 698 (2000) (the board may "draw reasonable inferences" from the medical evidence).
Moreover, evidence that claimant's symptoms appeared suddenly after the door-lock incident does not undermine the board's rejection of claimant's accidental-injury theory, as made clear by our decision in Luton v. Willamette Valley Rehabilitation Center , 272 Or. App. 487, 356 P.3d 150 (2015). In Luton , the claimant was involved in wrapping bundles of sticks at work, and he developed pain *80 in his right wrist. Id. at 488, 356 P.3d 150. The medical evidence showed that the claimant had a tear in the triangular fibrocartilage (TFC) of his right wrist. Id. at 489, 356 P.3d 150. Two physicians agreed that the claimant had an "ulnar variance" that preexisted and contributed to the tear, but they disagreed as to cause of that "variance." Id. An ALJ reversed the employer's denial, analyzing the claimant's condition as an injury rather than an occupational disease, reasoning that " 'claimant's symptomatic right TFC tear requiring surgery, as distinct from his prior asymptomatic right TFC condition, probably developed during the discrete period of performing the sticks job' " within a two-day period. Id. at 490, 356 P.3d 150 (brackets omitted; emphases added). On review, the board upheld the employer's denial, determining that the claimant's condition should be analyzed as an occupational disease and finding the pertinent condition to be the "claimant's right TFC tear[,] which is not traceable to an identified work event or discrete period." Id. (brackets omitted).
On judicial review, the claimant argued that the board's decision to analyze the claimant's TFC tear as an occupational disease was unsupported by substantial evidence or substantial reason. Id. We disagreed, concluding that "the ALJ's focus on symptoms as the [claimant's] condition is inconsistent with our decision in Smirnoff [, 188 Or. App. at 449, 72 P.3d 118 ], in which we held that the claimant, who suffered from an asymptomatic meniscal tear that became symptomatic during a discrete work episode, presented a claim for an occupational disease because the meniscal tear occurred gradually." Id. at 491, 72 P.3d 118. We concluded that substantial evidence supported the board's finding that the claimant's TFC tear developed gradually based on testimony from two physicians that the claimant's tear "could *770 have been caused by work activities 'as well as a lifetime of normal usage' " and that the claimant's ulnar variance had caused "a gradual wearing away of the TFC with 'activities of daily living.' " Id.
In this case, as in Luton , claimant's attack on the board's findings depends largely on equating the discrete time period in which his symptoms developed and the time period in which his condition developed. Yet, the proper inquiry for determining the applicable standard or *81 standards "is whether the condition itself, not its symptoms, occurred gradually, rather than suddenly," Smirnoff , 188 Or. App. at 449, 72 P.3d 118. Even where a claimant's symptoms arise within a discrete period, the medical evidence may support a finding that the condition which caused those symptoms did not necessarily develop in that same period. See Luton , 272 Or. App. at 490-91, 356 P.3d 150.
Thus, evidence that claimant's rotator cuff tendons were not fully torn until the door-lock incident does not conclusively establish that his condition developed at that particular time. Rather, the board could infer that the door-lock incident was the discrete period in which claimant's rotator-cuff condition became symptomatic , but his condition developed through occupational overuse over "many years." Therefore, the board could conclude that the evidence did not support an accidental-injury theory of compensability. See Jewell , 291 Or. App. at 706, 422 P.3d 388 ("Claimant is correct that she does not need to elect a particular theory of the case and can have both an occupational disease and an injury. But to prevail on a claim, there must be evidence in support of the claimant's chosen theory." (Citation omitted.) ).
In his reply brief, claimant asserts that, because "different parts of his shoulder sustained different injuries or conditions from different causal mechanisms, both the injury and the occupational disease claims are compensable." Yet, we see no indication in the record that, after the door-lock incident, it was possible to distinguish between the tears caused by the degenerative-disease process from any tears that occurred during the door-lock incident. In fact, Puziss testified that it was not possible to determine with certainty the extent to which claimant's rotator cuff tears had existed before the door-lock incident. Claimant does not point to evidence that he received distinct medical treatments for "different injuries or conditions," and the record reveals that claimant's orthopedist recommended a single course of medical treatment for his right shoulder condition. Accordingly, evidence that claimant's condition resulted from a combination of "different causal mechanisms" does not undermine our conclusion.
Affirmed.