208 December 31, 2025 No. 1141

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Compensation of Joseph Robey,
Claimant.

Joseph ROBEY,
*Petitioner,*

*v.*

WEIR ESCO,
*Respondent.*

Workers' Compensation Board
2104928, 2103887; A183717

Submitted November 5, 2025.

Jodie Anne Phillips Polich argued the cause for petitioner. Also on the briefs was the Law Offices of Jodie Anne Phillips Polich, P.C.

Alexander F. Sargent argued the cause for respondent. Also on the brief was MacColl Busch Sato, PC.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Claimant petitions for judicial review of a final order by the Workers' Compensation Board (board).[1] He contends that the board erred in finding that claimant failed to meet his burden of proof to establish the compensability of his injuries as a claim for a new/omitted condition. We affirm.

Claimant on appeal raises two arguments: (1) the board erred by analyzing the claim as an occupational disease rather than an industrial injury, because the employer, through its processing agent, designated the claim as one for an industrial injury on Form 1502, which bound the parties, the board, and now us to that theory of liability; and (2) substantial evidence does not support the board's determination that the medical evidence did not support compensability of his condition.

So framed, we focus on the facts relevant to the two questions. Those facts are undisputed. Claimant was 55 at the time he filed the claim at issue here. Claimant worked as a parts inspector for employer in a steel foundry. He had several low back injuries as an adult unrelated to his work for this employer. More specifically, he was involved in a car crash that resulted in back injuries and then suffered a low back strain while working a different job. He was also involved in an ATV crash, where the ATV rolled over him, causing fractures and other injuries to his back. In the years leading up to the current claim, claimant sought treatment for various low back pain issues and had been diagnosed with a lumbar strain and a disc protrusion. He continued to experience chronic low back pain.

Claimant's job involved lifting 5- to 45-pound metal parts from one place to another while twisting to his left and then inspecting the metal parts. A typical day involved examining about two tons of metal parts. From the end of December 2020 through January 2021, employer experienced a higher number of issues with its metal parts, which required claimant to inspect more parts per day—roughly three or four tons. During that two-to-three-week period,

---

[1] The ALJ issued its opinion and order, which the board then adopted in full.

claimant's chronic low back pain worsened. He filed an injury claim, and a doctor diagnosed claimant with a work-related lumbar strain.

Employer accepted claimant's "low back muscle strain" as a disabling work-related claim and issued Form 1502, "Insurer's Report," which it has to file within 14 days of its initial decision to accept or deny the claim. *See* OAR 436-060-0011. The form contains a series of "check the box" options, including one that requires the self-insured employer to state the "status of claim at the time of filing this report." One of the boxes that must be checked is whether the claimant has an "occupational disease" or an "injury." Employer checked the box for "injury."

In the following months, claimant saw Dr. Johansen. Johansen believed that claimant's work activities were the major contributing cause of his need for treatment and his injuries, which included annular tears and discogenic injuries. Claimant then saw Dr. Brett, who also believed that claimant's work injury was the major contributing cause of those injuries. Brett's assessment was based in part on claimant's self-report that each of his prior back injuries had healed and had "no residuals." A physician's assistant, Bobby Welsh, believed that claimant's annular tears were "likely due to his work injury * * *." Yet another doctor, Dr. Welch, diagnosed claimant with a low back strain. Claimant sent a letter to employer asking it to accept his annular tears.

Claimant was then examined by an insurer-arranged medical examiner, Dr. Bergquist. Bergquist diagnosed claimant with "chronic intermittent low back pain secondary to age-related degenerative changes in the lumbar spine," caused by genetics and time. Bergquist did not believe that any physical activities, short of violent trauma, could cause the low back pain, annular fissures, or discogenic injuries. He found it particularly notable, in comparing a 2015 MRI with a 2021 MRI, that there was no significant difference between the two scans of claimant's lumbar spine, supporting a conclusion that claimant's injuries represented pre-existing arthritis. Welch concurred with Bergquist's conclusions that physical activity could not cause his injuries and that his back pain was caused

by pre-existing degenerative changes. Welch believed that the accepted lumbar strain was medically stationary without permanent impairment and recommended the claim be closed.

Employer subsequently denied compensability of claimant's annular fissures and discogenic ailments as new or omitted conditions. It also closed claimant's accepted low back strain claim without a permanent impairment award.

The parties then took Welch's deposition. She again generally concurred with Bergquist's medical examination and conclusions. While Welch believed that claimant had a work-related lumbar strain due to his increased workload, she did not believe his annular fissures and discogenic conditions were caused by that increased workload.

Another doctor, Dr. Kane, also concurred with Bergquist's conclusion that claimant's annular tears and discogenic conditions were due to pre-existing degenerative arthritis and not caused by his job. Kane, in turn, disagreed with Brett's conclusion that claimant's work activities caused those conditions.

Brett then weighed in again, disagreeing with Bergquist and Welch. In his view, the annular tears and discogenic conditions were caused by the increased work activities.

Before the ALJ, claimant challenged the denial of compensability of his annular tears and discogenic injuries and asked that the ALJ set aside employer's denial. Claimant argued that his claim should be analyzed as an industrial injury rather than an occupational disease, that he suffered from no pre-conditions or combined conditions, and that the industrial injury from the increased workload in that two-to-three-week period was a material contributing cause of his annular tears and discogenic injuries. The distinction between industrial injury and occupational disease matters because, if analyzed as an occupational disease claim, the issue is whether claimant's work activities were the major contributing cause of the disease. ORS 656.802(2)(a). If, however, the claim is analyzed as an industrial injury claim, the issue is whether claimant has satisfied his burden

to prove that the claimed condition exists and that the work injury is a material contributing cause of the disability and need for treatment. *See* ORS 656.005(7)(a); ORS 656.266(1); ORS 656.245(1)(a). If claimant makes such a showing, and the record establishes that the otherwise compensable injury combined with a "pre-existing condition" to cause or prolong disability or a need for treatment, employer must prove that the combined condition is not compensable by showing that the otherwise compensable injury was not the major contributing cause of the disability or need for treatment of the combined condition. ORS 656.005(7)(a)(B); ORS 656.266(2)(a).

As noted, claimant argues that his claim should be analyzed as an industrial injury rather than as an occupational disease. His primary argument in support of that contention is that the board (and now this court) is legally obligated to treat his claim as an industrial injury claim because the employer, when it submitted Form 1502, "checked the box" indicating that the claim was an injury instead of the box indicating an occupational disease claim.[2] According to claimant, that "check the box" is legally binding for all purposes for the remainder of the case:

> "By allowing an insurer to initially accept a claim as an injury, then later, based on the nature of the condition claimed, to identify the claim as one for an occupational disease, impermissibly raises the burden of proof from material contributing cause of the condition or its treatment, to major contributing cause of the condition itself."

We disagree with claimant's threshold argument that the form dictates or binds an employer to a particular theory of compensability. As an initial matter, claimant does not point to any source of law that supports the proposition that he advances. Indeed, it would be somewhat anomalous if an insurer could, by virtue of checking a box on a form in the early stages of proceedings, bind the board and reviewing courts to a legal analytical framework. Form 1502 is expressly preliminary in nature, stating that the employer is to provide the status of the claim "at the time of filing this report." A 1502 form is distinct and separate from the

---

[2] Employer has not argued that the form did not classify the acceptance of the claim as an industrial injury, rather than an occupational disease claim.

Notice of Acceptance required by ORS 656.262(6) and OAR 436-060-0140(2), (4), or (6), which requires a detailed description of the compensable conditions, disabling or non-disabling status, reinstatement rights, and the requirements for seeking acceptance of new or omitted conditions, among other things.

Once the Notice of Acceptance or the denial is issued, it is for the board (and then the reviewing courts) to decide the appropriate legal standard. That much is clear from existing case law. Both we and the Supreme Court have noted that "the board's first task is to determine which provisions of the Workers' Compensation Law are applicable." *Hewlett-Packard Co. v. Renalds*, 132 Or App 288, 292, 888 P2d 92 (1995) (quoting *DiBrito v. SAIF*, 319 Or 244, 248, 875 P2d 459 (1994)). In *Hewlett-Packard Co.*, the employer argued that because the claimant had only raised an injury theory, the board erred in concluding that the claimant's condition was compensable as an occupational disease. *Id.* at 290. We observed that the fact that the claimant "had not previously labeled her claim as one for an occupational disease is immaterial." *Id.* at 292. "[A] claim may be cognizable under either an occupational disease or an accidental injury theory[,]" and the board determines which is the proper legal framework. *Id.*

Having concluded that the form does not dictate the board's authority to determine the proper analytical framework, we turn to the question of whether the Board applied the correct legal standard, *i.e.*, the occupational disease standard rather than the industrial injury standard. "We review the board's legal conclusions for legal error and its determinations on factual issues for substantial evidence, which includes substantial reasoning." *Luton v. Willamette Valley Rehabilitation Center*, 272 Or App 487, 490, 356 P3d 150 (2015) (citing ORS 183.482(8) and *Cummings v. SAIF Corp*, 197 Or App 312, 318, 105 P3d 875 (2005)).

The board concluded that claimant's condition arose over time and analyzed it as an occupational disease. *See generally James v. SAIF*, 290 Or 343, 348, 614 P2d 565 (1981) ("What sets occupational diseases apart from accidental injuries is both the fact that they cannot honestly be said

to be unexpected, since they are recognized as an inherent hazard of continued exposure to conditions of the particular employment, and the fact that they are gradual rather than sudden in onset." (Internal quotation marks, brackets, and citation omitted.)). The focus of the occupational disease analysis is on whether the development of claimant's condition was an "event," as distinct from an ongoing condition or state of the body, and whether the onset of his problems was sudden or gradual. *Mathel v. Josephine County*, 319 Or 235, 240, 875 P2d 455 (1994). The phrase "sudden in onset" refers to an injury occurring during a short, discrete period, rather than over a long period of time. *Donald Drake Co. v. Lundmark*, 63 Or App 261, 266, 663 P2d 1303 (1983), *rev den*, 296 Or 350 (1984). "[A]n *injury* based on repetitive trauma must develop within a discrete, identifiable period of time due to specific activity." *LP Company v. Disdero Structural*, 118 Or App 36, 40, 845 P2d 1305 (1993) (emphasis in original).

Here, in support of its conclusion that claimant's claim should be analyzed as an occupational disease, the board observed that claimant had a series of low back injuries and chronic low back pain before the period between December 2020 and January 2021—when he was lifting heavier loads at work. The board was persuaded by the opinions of Bergquist, Kane, and Welch, all of whom believed that the evidence supported the finding that claimant's annular tears and discogenic conditions were a result of age-related degenerative changes. In particular, the board found significant that Bergquist reviewed a 2015 MRI and a 2021 MRI scan and concluded that there was little difference between the two, a conclusion supported by Welch. That, in turn, persuaded the board that claimant's condition was one that developed over time.

Although claimant contends that Brett's opinion, which attributed claimant's conditions to his increased work activities, is more persuasive than those of Bergquist, Welch, and Kane, the board expressly found Brett's opinion to be unpersuasive. That was because Brett did not review or compare the two MRI scans, did not address or rebut the opinions of Bergquist, Welch, and Kane, and his conclusions

were based on claimant's own statements of his medical and injury history. The board found that claimant was not a "reliable historian," inasmuch as he did not recall being in a motor vehicle crash and did not recall low back injuries in 2003 and 2004 (the ATV crash), all of which resulted in low back and hip pain and a fractured lumbar spine vertebra. Given that Brett did not describe any of those prior injuries and given claimant's "unreliability as a historian," the board concluded that Brett was not well-informed. The board's conclusions are supported by substantial evidence. ORS 183.482(8)(c); *Garcia v. Boise Cascade Corp.*, 309 Or 292, 294, 787 P2d 884 (1990) ("Substantial evidence supports a finding when the record, viewed as a whole, permits a reasonable person to make the finding."). Therefore, the board did not err in analyzing claimant's condition as an occupational disease rather than as an injury.

Affirmed.